# Wytheville

NATHAN T. BARBER v. COMMONWEALTH OF VIRGINIA.

June 22, 1944.

Record No. 2834.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and
Spratley, JJ.

The opinion states the case.

*Hiram M. Smith,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

The defendant, Nathan T. Barber, has been convicted of an attempted rape. The prosecuting witness is an unmarried woman, twenty-four years old, who works in a Richmond bank and has completed her course as a Nurses' Aide. The offense charged was committed on May 26, 1943. After banking hours on that day, she "went over to a funeral home at 25th and Venable streets to see a man's body whom I used to go with." After that she reported

to the Medical College of Virginia Hospital for duty, and at 10:20 she left the hospital and crossed the street to a restaurant and beer parlor, frequented by the medical profession and called "The Skull and Bones." She was tired and seated herself in a booth there and ordered a glass of beer. She saw the defendant standing by the beer counter and noted that he had ordered two glasses of beer. He came over to her booth and asked her if he might sit down. She consented; he did so, and then followed such casual conversation as might be expected between strangers. He then asked her if she would have some champagne, and she replied that she did not drink champagne, but told him that she was tired and "wanted to go home and take a bath, and go to bed." He then ordered two beers—one for her and one for himself—and these he paid for, although she offered to pay for that which she drank. He then offered to take her home; that offer she refused. He asked her if she went home by bus or street car, and said: "I can take you there." She replied: "All right, thank you." He then said: "How about my walking with you?" She answered: "That will be perfectly fine, will be perfectly all right." They then left this restaurant together and walked towards Broad street. He suggested that she go in his car, to which she answered: "No, I am very sorry," and said that she wanted to go straight home. He replied: "I will take you straight home." She again declined, saying: "No, I will go home on the bus, thank you; it is getting late." They parted as they reached Broad street, she walked west on it and was between Ninth and Tenth streets when a car drove up and stopped. She recognized the defendant, who had "hollered" and stopped. He told her: "Don't be foolish, get in the car, and I will take you straight home." "I said 'No'." He answered: "Well, you certainly have succeeded in insulting me." She denied having intended to do anything of that sort. He again said to her: "Well, come on and get in the car and don't be so foolish and I will take you straight home." She answered: "All right," and got in the car. They went west on Broad street and

turned south to Monument avenue. He asked her to sit over close to him and tried to put his arm around her. ..."I * * * told him to put both hands on the wheel, but I still hadn't any idea what he had in mind."

She lived on Stafford avenue, and when she neared that street, she told him to turn at the next corner. Thinking that he did not have a strong grip on the steering wheel, she attempted to swerve the car, but his grip held. . They proceeded up Monument avenue to Chantilly street, where he turned to the north and stopped between Monument avenue and Grace street, more than a mile beyond her home. It was then twenty-two minutes past eleven. When the car stopped,.he did everything he could to induce her to yield to his desire and put his hands upon her person under her skirt. She got out of the car at least twice, when he brought her back. There is no evidence that he attempted by force to accomplish his purpose. That he did desire to have improper relations with her is perfectly plain, and that he concedes. From 11:22 until 1:45 this situation continued. It was while he was making ineffectual efforts to induce her to accede to his desire that, by way of protest to her attitude, he said that she was "inhuman;" to which she replied: "Most people usually think I am inhuman."

At 1:45 a police car drove up. At that time she was out of the car; Barber was in it. When this car came up, she asked who was there and was told that they were police officers, and she said: "Thank God you came here now." Her shoes, stockings and clothes were muddy, and Barber's shoes were muddy also. Barber was arrested, taken to the police station, and afterwards indicted.

The officers in the police car on their way west had seen the defendant's car parked in this place but did nothing because they said that it was not unusual to see cars parked there at that time. And it was upon their return, more than an hour later, that they drove up to see what it was all about.

When this case came on for trial, the Commonwealth offered to prove that the defendant had been guilty of a like

offense with another woman, had been indicted therefor, and that this indictment was still pending. The attorney for the Commonwealth said:

"If Your Honor please, I am not going to and never have tried to mislead Your Honor and I am certainly not going to try to mislead you now. It is very doubtful as to whether this sort of evidence would be admissible to prove an independent offense, although it was of the same nature. I am not here to tell you that the law is well settled but when he, on cross examination, says that this girl gave him a come-hither look and undertakes to show to that jury that it was on an invitation from her that he took her out, that she was the moving spirit in it all, I think I would have a right to show that on a similar instance he had picked up another one and carried her out and tried to do the same thing that he did to this girl. I will admit that the law is very doubtful, although it may be you could prove the independent offense where it was alike and where the question of intention and motive was involved, but I never have tried to bring in a proposition that would mislead Your Honor in the law and I am not going to do it now but I think it is my duty, if that evidence is admissible, in view of the defense that this man has put up here, to try to get that evidence in if I can."

The presiding judge in the trial court said:

"For the purpose of showing intent as to which certain acts were done in this case but there is plenty of Virginia law as to intent in robbery and larceny and murder and all of those things but it hasn't come around to rape. * * * "

"I am going to let the Court of Appeals pass on the question of whether or not it should come out and I am not going to have one of these rapers in the city getting off one at a time and by combining five of them he doesn't get off. I am not going to be a party to that."

Whereupon the accused made this pertinent inquiry:

"Well, Judge, Your Honor, and Judge Haddon, I want to know if I am being tried on both of these cases at the same time?"

The force of this inquiry is shown by the fact that much of the record here is taken up by evidence of what occurred there. It was admitted with a wealth of nauseating detail. To the charge in that case this defendant said that the situation was this: That the woman expressed a willingness to accede to his desire if he would give her ten dollars; this he would not do, and she got out of the car and left.

It would be unlooked for and curious if we sustained a judgment which rested, in part, at least, on collateral testimony that was afterwards repudiated in a trial to which it properly belonged.

In 44 Am. Jur. (Rape) section 79, it is said:

"The courts universally refuse to admit evidence of the commission of other and distinct crimes where such evidence is not otherwise relevant, and in the application of this rule it is well settled on a prosecution for rape that evidence of another rape or other sex crime committed at a different time and on or against another person, and having no connection with the crime charged, is not admissible. This has been held to be the rule applicable when the prosecution alleges a violation of the age of consent law, or statutory rape, as distinguished from the common-law offense. The prosecution may not show that the defendant has had sexual intercourse with other young females, or that he has committed other sex crimes and immoral acts. Evidence that the defendant has committed other nonsexual crimes is also inadmissible."

Exceptions to this rule are noted in this paragraph. In commenting on them, it is said:

"There must be a causal relation or logical and natural connection between the two acts, or they must form parts of one transaction."

In Wigmore on Evidence (2d Ed.), Vol. 1, p. 664, it is said:

"The committing of a single previous rape, or rape-attempt, upon another woman may not in itself indicate such a design," and to support that view careful attention is invited to *State* v. *Lapage*, 57 N. H. 245, 289, 24 Am. Rep.

69, opinion by Cushing, C. J. After quoting at length from it, he goes on to say: "Nevertheless, a single previous act, even upon another woman, *may*, with other circumstances, give strong indication of a design (not a disposition) to rape."

We know of no case in Virginia in which, on trial for attempted rape, evidence of another attempted rape of another woman has been admitted; but the principle involved has frequently been passed upon. The leading case on this subject in Virginia is *Walker* v. *Commonwealth*, 1 Leigh (28 Va.) 574. A woman was indicted for stealing a watch. Proof was offered that she had at another time stolen a coat. She was convicted and that conviction was set aside. Judge Brockenbrough, in the course of a well considered opinion, said:

" * * * but it is an important principle, that the prisoner should not be taken by surprise. As he is charged with a particular offense, he has notice to be prepared to defend himself against that charge, and that alone. He cannot be prepared to defend himself against other charges, not exhibited against him or to maintain the integrity of his whole life, when that is not put in issue; and when it is, he cannot be prepared to account for particular instances of malconduct, of which he is not previously informed, and as to which he is not required to defend himself."

He further said:

"I do not deny that the proof of other criminal acts done by the prisoner, may afford a strong or even violent presumption of his intention in the particular act under consideration. To prove that a prisoner charged with larceny, had in his possession other stolen goods, taken from other persons, at other times, or that he has general bad character for honesty, or that he has before been guilty of theft, may afford a presumption that his intent on the present, is similar to his intent on former, occasions. But they do not prove any necessary connection between his intent and his act on this particular occasion, and are liable to all the objections before stated to that kind of evidence."

The court referred to one class of cases in which the English courts permitted the introduction of evidence tending to show other criminal acts, such as the uttering of other forged paper, when it was necessary to prove the scienter.

In *Faulkner* v. *South Boston*, 139 Va. 569, 123 S. E. 358, the court said that it was competent to introduce evidence of related facts and circumstances which tended to establish the constituent elements of the crime in judgment. There, where one was on trial for selling ardent spirits to another, evidence was admitted to show that he had tried to sell it to others also.

In *Harold* v. *Commonwealth*, 147 Va. 617, 136 S. E. 658, evidence was admitted to show that the defendant had been convicted of violating the National Prohibition Act and for that reason had been dishonorably discharged from the Army. This was held to be error. Judge Burks quotes at length from *Walker* v. *Commonwealth*, *supra*, where it was said:

"But if they" (this admitted evidence) "denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to prejudice the minds of the jury; and for this additional reason they ought to be excluded."

If a jury could be prejudiced by evidence that a coat had been stolen what can be said of evidence tending to show that the accused had at another time attempted to rape another woman.

In *Limbaugh* v. *Commonwealth*, 149 Va. 383, 140 S. E. 133, it appears. that a chiropractor, by false representation, seduced a patient, the prosecutrix. Some question arose as to whether or not a door was locked. Evidence was admitted to show that the defendant had made improper advances to his stenographer. She was asked to bring her notebook into the operating room, and her. reply, admitted in evidence, was this:

"When I got in there, he turned the key in the door, and put the key in his pocket, and he grabbed hold of me, but

I grabbed up the 'phone to call for help, and then he let me go and opened the door."

The court said: "The testimony was offered not for the purpose of impeaching the veracity of the defendant as a witness, but of showing his attitude in his intercourse with women."

The major purpose behind the introduction of evidence in the instant case was to show the attitude of Barber towards women.

The court further quoted with approval from Jones on Evidence (2d Ed.), section 143:

■ " 'It is a familiar rule that it is improper, on the trial of a defendant for a crime, to prove that he has committed other crimes, having no connection with the one under investigation. Such other acts of criminality or immorality are not legally relevant and should not be dragged in to prejudice the defendant or to create a probability of guilt.' See also 10 R. C. L., page 951, section 121; *Dillard* v. *Collins*, 25 Gratt. (66 Va.) 343, 359; *Price* v. *Commonwealth*, 21 Gratt. (62 Va.) 846, 868."

It also quotes with approval this statement of the law from *Colvin* v. *Commonwealth*, 147 Va. 663, 137 S. E. 476. .

" 'There is much to be said in favor of putting before the jury a man's general reputation in the community relevant to the character of the offense with which he is charged, though not first put in issue by him,' but this would not warrant the reception of testimony of an alleged isolated assault upon another woman under entirely different circumstances. Conceding the relevancy of such testimony, there is much relevant testimony that is rejected on account of undue prejudice, unfair surprise, or confusion of issues. 1 Greenl. Ev. (16th ed. by Wigmore), section 14a. The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge against him made in the course of the introduction of the evidence. His general reputation for specific traits of character he is always presumed to be ready to vindicate, but to require him to meet such a charge as was made by the witness,

Lillian Lane, would be an unfair surprise to him, would unduly prejudice his case before the jury, and if the details of his denial were gone into would unduly protract the trial and have a tendency to confuse the issue the jury were sworn to try. His general reputation as to his intercourse with women was a legitimate subject of inquiry, but not the specific assault alleged."

In *Webb* v. *Commonwealth,* 154 Va. 866, 152 S. E. 366, the court reaffirmed this general rule but said that evidence of other offenses was admissible "whenever it becomes necessary to show the relations between the parties, their state of feelings and course of conduct towards each other, malice and intent, and possible motive which actuated the commission of the act." Here evidence was admitted to show the relations of the defendant with the deceased's wife as tending to show motive.

Next is the case of *Boyd* v. *Commonwealth,* 156 Va. 934, 157 S. E. 546, where the defendant was charged with embezzlement and larceny from a rubber company of which he was president, sales manager and agent. Proof was admitted of sales by him of other goods not reported. It was held to be competent. Prentis, C. J., said these were recognized as general exceptions to the rule:

"There are many exceptions to the general rule as to proof of other offenses; for example, it is frequently impossible to give a connected statement showing the crime charged without incidental reference to other contemporaneous and closely connected and similar crimes, and where there is only such incidental disclosure of other offenses, such testimony cannot be excluded.

"In addition, it is also permissible, in cases where the motive, intent, or knowledge of the accused is involved, to admit evidence of acts, conduct, or declarations which tend to establish such knowledge, intention, or motive of the accused, notwithstanding the fact that this may disclose a different crime in law.

"Such testimony is also admissible where the other

crimes constitute only a part of the general scheme of which the crime charged is a part.

"These exceptions are as well established as the rule itself."

This case was criticized in 16 Va. Law Review, 864.

In *Hall* v. *Commonwealth*, 143 Va. 554, 130 S. E. 416, the accused was charged with the unlawful transportation of liquor. Proof that the defendant, while intoxicated, had on another occasion operated an automobile at an unlawful rate of speed on a public highway was admitted. The court said that even if it were improperly admitted, it was harmless.

We have seen that "there must be a causal relation or logical and natural connection between the two acts, or they must form parts of one transaction."

Evidence of the theft of one article is not ordinarily competent evidence to prove the theft of another. Evidence of an attempt to seduce one woman is not competent when seduction is charged in another case.

It appears in the instant case that the defendant was in the habit of taking women to ride at night in his automobile. This habit, sometimes reprehensible, is too widespread to come within any exception to the rule. It shows an unwholesome desire for women. That, the Limbaugh case tells us, is not enough.

Since it is not admissible for any of these reasons, it is not admissible for a still stronger reason. It tended to prejudice the jury.

In the instant case it turned its trial largely into the trial of his other case and should have been excluded.

For the foregoing reasons the judgment of the trial court is reversed, the verdict of the jury set aside and the case remanded to the said hustings court for a new trial.

*Reversed and remanded.*

Browning, J., dissenting.