# Richmond

FRANK CLINTON ANDERSON v. COMMONWEALTH OF VIRGINIA.

June 10, 1974.

Record No. 730465.

Present, All the Justices.

*Douglas M. Swift, Jr.*, for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Snead, C.J., delivered the opinion of the court.

Defendant, Frank Clinton Anderson, was tried by a jury and found guilty as a principal in the second degree of distributing

marijuana, a controlled drug. He was sentenced to a term of five years in the State Penitentiary, and we granted him a writ of error.

In his assignments of error, defendant challenges the trial court's rulings in admitting certain evidence and in refusing to set aside the verdict as being contrary to the law and the evidence.

The Commonwealth's only witness, William D. Spence, an undercover narcotics investigator for the State Police, was on June 30, 1972, driving his automobile in Winchester with Stephen Kremer and Finley Whitlock as his passengers. At approximately 7:30 p.m. Spence stopped his car, and defendant entered it. Defendant sat in the front seat, and Whitlock and Kremer were in the rear seat. Spence testified that defendant stated, "he would like to sell all of the 'weed' that day" and asked Kremer and Whitlock how much they had sold. Spence stated that Whitlock replied, "he had sold $140 worth at that time." Defendant then told Kremer and Whitlock that "they should be able to sell the rest of the 'pot' at the Firestone area or at the park."

Spence further testified that at about 7:45 p.m., Kremer saw Larry Wallace and at Kremer's suggestion, Spence stopped the car. Kremer asked Wallace if he wanted to buy some marijuana. Wallace joined Kremer and Whitlock in the back seat, and they rode around the block. Wallace criticized the quality of the marijuana and defendant told Wallace, "that was good 'weed' " and "either he wanted to buy some or he didn't." According to Spence, Wallace then purchased an "ounce of marijuana from Kremer for $20." Wallace gave the money to Kremer who handed it to Whitlock. Wallace then left the car. The substance sold to Wallace was contained in a transparent plastic bag similar to a sandwich baggy, but the substance was not chemically analyzed.

After Wallace departed, defendant advised Kremer and Whitlock how to handle people who were hesitant about buying the "pot" and told them to be careful. Defendant further said that "there was good marijuana and that it came in a brick and that he was supposed to get approximately two pounds again on Saturday." Defendant left the vehicle after being driven to the vicinity of Cartwright's Recreation Center where he had been picked up.

Spence also testified that prior to meeting defendant that evening, he was "flagged" by Kremer at approximately 6:25 p.m.; that Kremer asked him if he wanted to buy some "pot" for $20 an ounce; that Kremer got in the car and asked Spence to take him to his residence; and that on the way Kremer took from his pocket three plastic baggies containing a green substance that appeared to be marijuana, laid them on the seat and told Spence to choose one. Spence said that when they arrived at Kremer's residence at approximately 6:30 p.m., he (Spence) chose one of the baggies and gave Kremer $20; that Kremer placed the remaining two baggies in his coat pocket and went inside his residence; and that in approximately two minutes Kremer returned to the car with Whitlock. The three then drove off and approximately one hour later picked up defendant.

Spence, who had been trained in the identification of marijuana, testified that the baggy he bought from Kremer was the same in appearance as the baggy Kremer later sold to Wallace in defendant's presence. Over objection of defendant, the Commonwealth introduced evidence of the chemical analysis of the substance Spence bought from Kremer, which showed it to be marijuana.

Defendant admitted being in the car with Spence, Kremer and Whitlock when the transaction with Wallace took place but disclaimed any connection with or participation in the distribution.

■ Defendant's first contention is that the testimony of Spence regarding statements by Whitlock while defendant was present and statements by Kremer before defendant entered the car was inadmissible as hearsay.

Spence testified, over objection, that in response to defendant's question Whitlock told defendant that $140 of the "weed" had been sold. The statement was made immediately before Wallace entered the automobile and the alleged drug sale to him took place. Such a statement is competent, not for the purpose of proving the truth of the matter asserted, but to permit the jury to infer defendant's state of mind in consequence of the utterance. We hold that the hearsay rule is inapplicable to the statement. *See United States* v. *Rivers*, 468 F.2d 1355, 1356 (4th Cir. 1972), *cert. denied*, 411 U.S. 969 (1973); VI Wigmore, *Evidence* § 1766 (3d ed. 1940).

■ Spence also testified, over objection, that before defendant

entered the car, Kremer asked Spence if he wanted to buy some "pot" and that Kremer took three baggies out of his pocket and told Spence to choose one. Even though declarations, made outside of a defendant's presence, generally fall within the hearsay rule, they may be admitted in evidence as declarations uttered by a co-conspirator in furtherance of a common, illegal design. *Sands* v. *Commonwealth*, 21 Gratt. (62 Va.) 871, 895 (1872). *See* 22A C.J.S. *Criminal Law* § 754. Such declarations are admissible even though a conspiracy is not charged where the evidence establishes a *prima facie* case of conspiracy. *See Cottrell* v. *Commonwealth*, 134 Va. 554, 557-58, 113 S.E. 728, 729 (1922); *State* v. *Skinner*, 110 Ariz. 135, 144, 515 P.2d 880, 889 (1973). We hold that in the case at bar the evidence established a *prima facie* case of conspiracy, and that the contested statements were admissible under the co-conspirator exception to the hearsay rule.

■ Next, defendant argues that evidence relating to the sale of marijuana by Kremer to Spence and to the chemical analysis of the substance was inadmissible as being irrelevant and prejudicial to defendant's case.

Spence testified that Kremer sold to him what appeared to be marijuana approximately one hour before defendant was picked up. Over objection, Spence said that he had the substance analyzed and that results of the analysis showed it to be marijuana. Also over objection, the Commonwealth introduced in evidence a certificate of the chemical analysis showing the substance to be marijuana.

In *Snyder* v. *Commonwealth*, 202 Va. 1009, 1015, 121 S.E.2d 452, 456-57 (1961), we said:

> "It was incumbent upon the Commonwealth, in proving her case against the defendant as an aider and abettor, to establish the commission of the substantive offense by . . . the principal.

* * *

> "In establishing the crime of the principal, his actions and declarations immediately after the alleged theft, and in furtherance thereof, connected, as they were, with other evidence of his involvement in the crime, were directly in issue in the case against the defendant."

The same reasoning applies in the case at bar to evidence of the

criminal conduct of Kremer, the principal in the first degree, in the time period immediately before the commission of the crime for which defendant was convicted as a principal in the second degree. This is true even though defendant was not present. *Parish* v. *Commonwealth*, 206 Va. 627, 635, 145 S.E.2d 192, 197 (1965), *cert. denied*, 384 U.S. 942 (1966).

The case at bar is distinguishable from *Eccles* v. *Commonwealth*, 214 Va. 20, 197 S.E.2d 332 (1973), *Boyd* v. *Commonwealth*, 213 Va. 52, 189 S.E.2d 359 (1972), and *Olsen* v. *Commonwealth*, 212 Va. 545, 186 S.E.2d 51 (1972), where this court reversed convictions for controlled drug violations in which evidence was introduced showing defendants' connection with other drug offenses. Here, the Commonwealth was required to establish commission of the substantive offense by Kremer, the principal in the first degree. This was a vital issue in the case against the defendant as principal in the second degree. Evidence of the prior transaction was relevant to and admissible upon that issue.

Defendant's final contention is that the evidence was legally insufficient to sustain a conviction. He argues that the substance which Kremer sold to Wallace was not proved to be marijuana; that there was a break in the chain of evidence linking the substance Kremer sold to Spence with the substance Kremer sold to Wallace; and that, therefore, the Commonwealth did not prove the *corpus delicti*.

Approximately one hour before the sale for which defendant was convicted as a principal in the second degree, Kremer, the principal in the first degree, made a sale to Spence of a substance that was shown by chemical analysis to be marijuana. When defendant joined Spence, Kremer and Whitlock, he encouraged them by stating that "he would like to sell all the 'weed' that day." He further aided them by suggesting where they should go to sell the "rest of the 'pot'." According to Spence, marijuana is commonly referred to as "weed" or "pot." Kremer asked Wallace if he wanted to buy some "marijuana," and defendant told Wallace "that was good 'weed'." Defendant referred to the substance as "marijuana" and said that he was supposed to get two pounds more in the near future. Additionally, Spence, a narcotics investigator trained in recognizing marijuana, identified the substance sold to Wallace as marijuana and said that the plastic baggy in which it was sold

was similar to the plastic baggy which contained the marijuana that he bought from Kremer.

Assuming, but not deciding, that there was a break in the chain of evidence linking the chemically analyzed marijuana sold by Kremer to Spence with the substance Kremer sold to Wallace, there was independent evidence sufficient to support the jury's finding that the substance sold to Wallace was marijuana. Moreover, the evidence was sufficient to support a finding that defendant knew the substance was marijuana, and that he participated in its distribution as a principal in the second degree.

The judgment appealed from will be

*Affirmed.*