## Richmond

### TAMMY DONAHUE

### V.

### COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 820469.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,* and Stephenson, JJ., and Harrison, Retired Justice.

* Justice Thompson prepared and the court adopted the opinion in this case prior to the effective date of his retirement on March 2, 1983.

146

*Charles Joseph Zauzig, III,* for appellant.

*Richard B. Smith, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Tammy Childers Donahue was charged in separate indictments with possession with intent to distribute phencyclidine (PCP) and more than one-half ounce but not more than five pounds of marijuana. Tried by a jury, Donahue was convicted and her punishment fixed at imprisonment for thirteen years and a fine of $10,000 on the PCP charge and imprisonment for two years on the marijuana charge. The trial judge sentenced Donahue in accordance with the jury's verdict, except that he suspended payment of the fine.

On July 1, 1981, at approximately 3:00 p.m., Detective Steve Kincheloe and other police officers with the Arlington County Police Department executed a search warrant at a residence at 2910 South 2nd Street in Arlington County. When they knocked, the front door was opened quickly by Donahue, who made no effort to conceal anything. Kincheloe identified himself, served the search warrant, inquired of the defendant's name and whether she lived there, and advised her of her *Miranda* rights. Donahue, in turn, identified herself, responded that only she and her "husband" David Donahue lived in the house, and then let the police in. Up until that time, Donahue had been the only person in the house which was leased to David Donahue.

An extensive room-by-room search began in a spare bedroom upstairs. Some papers addressed to a Douglas Halverson were found there. When asked who Halverson was and whether he still lived there, Donahue explained that "we" had rented a room to him previously, but that he had since moved out and had not resided in the house for approximately three months. Called as a defense witness at trial, Halverson confirmed what Donahue had

said and added that he had a key to the house; that he kept some belongings there; that he still paid rent to Tammy Donahue; and that he would go by several times a week to pick up his mail. Halverson stated that none of the controlled substances seized belonged to him.

In the upstairs master bedroom which Donahue indicated that she and David shared, the following handwritten note was found lying on the bed:

Tammy,
Here's $10.00; Steve came by and bought a O.Z. Call Starr first and try to set something up for 11.

Love, David

Put 5 in the Z
the rest to get in.

The note was admitted into evidence, over Donahue's objection, and read to the jury. Kincheloe testified that David drove a Chevrolet Camaro Z-28 automobile; that "O.Z." was a term used in the drug world for an ounce of a controlled substance such as marijuana, PCP, or cocaine; and that the $10 was never found.

Adjacent to the bed, atop an electronic amplifier belonging to David, was a plastic baggie containing individual aluminum foil packages, which, when combined, contained 1.285 grams of green plant material with a PCP concentration of 4%. Beneath the PCP was a small booklet of "love coupons" which Tammy had signed and given to David several days earlier. Based on his experience as a detective with expertise concerning the packaging and distribution of drugs, Kincheloe testified that these foil packets of PCP were packaged for distribution "on the street." On a nearby dresser, cigarette papers which could be used to roll marijuana or PCP into cigarette form were discovered.

Moving downstairs into the dining room and adjoining spare bedroom, the police found sixteen 35 mm. film canisters. No. 35 mm. camera was ever located. According to Kincheloe, PCP is frequently distributed in such containers.

Next to the canisters in the spare bedroom, which was being used for storage, was a bucket that had a peculiar odor which Kincheloe said smelled like PCP. A forensic chemist testified that he was unable to detect a controlled substance in the bucket, explaining that none was there or the quantity was too minute to

render a positive test. In the same room the police found three plastic baggies, containing approximately 27 ounces of marijuana, inside a paper bag in a wicker basket. Kincheloe testified that this quantity of marijuana was more than one person would normally keep for personal use.

In the kitchen downstairs, in open view, the police discovered a set of weighing scales, a weighing pan containing traces of brown plant material, two jars of parsley, and several boxes of plastic bags. Kincheloe explained that each of these items was commonly used in the distribution of PCP and marijuana: the parsley was treated with PCP and then smoked, the plastic sandwich baggies were utilized in the sale of marijuana, and the sealable plastic freezer bags were frequently used in the distribution of PCP which tends to deteriorate in potency when exposed to air. There was no indication that anyone had been preparing food in the kitchen.

Donahue was then arrested. Upon leaving the house, Kincheloe asked about the ownership of a jacket that was hanging on the back of the front door. Donahue said the jacket was hers. When the police searched it, they found a single hand-rolled marijuana cigarette.

On the personal history sheet Donahue filled out after her arrest, she stated that she was married and listed her present address and the address of her "husband," David, as 2910 South 2nd Street, Arlington.

Over Donahue's objection, the Commonwealth called, during its case-in-chief, Officer Joseph Peralta, an Arlington County detective, and examined him extensively as to his earlier arrest of Donahue on drug-related charges. Peralta testified that on May 20, 1981, exactly one month and eleven days before her arrest on these charges, he observed Donahue and several men together in an automobile at a local convenience store; that she was handling PCP; that during a subsequent frisk of her clothing a plastic bag containing PCP was discovered; that she was then arrested; and that sometime later Donahue confessed that she had been selling the PCP. The trial court, at that point, instructed the jury[1]:

---

[1] At the close of the trial, a similar jury instruction was given:

    You may consider proof of the defendant's prior conviction of a felony as affecting her credibility, but it does not render her incompetent to testify nor shall you consider it as evidence of her guilt of the offense for which she is on trial.

THE COURT: Members of the jury, I'll give you an instruction on the subject at this point rather than waiting until the general instructions. This evidence has been admitted for a limited purpose. The evidence of prior criminal activity is never admissible in a case to show that the defendant is guilty of the crime for which she is now on trial.

That's another case. That's if you should find her guilty of the cases for which . . . she's charged under these indictments that you have before you today, you should not consider it to enhance her punishment or should you consider that she should be punished more seriously because of the other activity.

It's admissible only for this reason. The Commonwealth has the burden of proving intent to distribute and they in the course of doing so wish to offer such evidence as they can . . . [to negate] the thought that she might not have known what the substance was or she might have been unaware of its presence or she might have no intent to distribute, and this of course is not conclusive.

It's simply circumstantial evidence that you can consider along with all the other evidence in this case for whatever weight you want to give it insofar as it may shed light on those elements for intent, motive, knowledge, etc.

When she later took the stand on her own behalf, Donahue was cross-examined about this prior offense. Although she admitted familiarity with how PCP and marijuana were packaged, and having pled guilty to an accommodation sale in the earlier offense, she vehemently denied the present charges and any involvement with David in the distribution of drugs.

Donahue explained that she had spent the night before the search in the master bedroom; that she had left David asleep in bed when she left for work that morning; and that he had telephoned and asked her over for lunch. She left work, arriving at the house at approximately 2:15 p.m. She then let the dog out, fixed a sandwich in the kitchen, and waited for David to arrive. Donahue denied seeing the weighing scales in the kitchen, the

You may consider proof of defendant's prior conviction to the extent that it is a factor in determining the defendant's intent to distribute or knowledge of the character of the controlled substance, but you may not consider such proof as evidence that the defendant had knowledge of the presence of the controlled substance.

handwritten note from David upstairs, or any of the illegal drugs seized. As to the presence of the plastic bags in the kitchen, she explained that she used them for fixing lunches and freezing various foods. Donahue added that, since it was July, she had not worn for some time the leather jacket in which the marijuana cigarette was found. In her estimation, she had been in the house for some 30-35 minutes before the police arrived.

Donahue added that she and David had lived together for approximately eight years; that she regarded their relationship as a "common law marriage"; that they had argued over his involvement with drugs; that she subsequently moved out and rented an apartment nearby; and that she split her time between the two locations. She admitted that she paid the utility bills for the house, kept clothing there, and still had a key.

David Donahue was also charged, but has never appeared.

On appeal, Donahue alleges that the trial court erred on the following evidentiary points: (1) admission of the handwritten note from David, and (2) admission of Officer Peralta's testimony pertaining to her prior arrest and conviction.[2]

## I. *Handwritten Note.*

In admitting the note into evidence over Donahue's objection, the trial court agreed with the Commonwealth's assertion that the note was not hearsay because it was being offered simply to prove the fact of utterance, a "verbal act."

Donahue contends now, as she did below, that the note was hearsay and that despite assurances to the contrary the Commonwealth used it throughout the trial to prove that she had knowledge of the presence of the drugs in the house.

■ In *Stevenson* v. *Commonwealth,* 218 Va. 462, 464-65, 237 S.E.2d 779, 781 (1977), we quoted with approval from *McCormick on Evidence* § 246, at 584 (2d ed. 1972) the following definition of hearsay:

Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted

---

[2] Donahue also challenges the sufficiency of the evidence. In light of our analysis, we need not and do not address that assignment of error.

therein, and thus resting for its value upon the credibility of the out-of-court asserter.

Our analysis must begin with a consideration whether the handwritten note falls within the foregoing definition, and, therefore, is in fact hearsay.

Donahue submits that the Commonwealth's instruction and use of the note here suffers the same infirmities found in *Stevenson.* There, we held that the hearsay rule excluded the non-verbal act of the defendant's wife in giving a police officer a particular shirt in response to his inquiry as to what the defendant was wearing on the day of the crime. We reasoned that the Commonwealth had used the wife's conduct to show the truth of the matter asserted: that the shirt belonged to and was worn by the defendant at the time the crime was committed.

The Attorney General relies upon *Fuller v. Commonwealth,* 201 Va. 724, 113 S.E.2d 667 (1960), where we held that the hearsay rule does not operate to exclude evidence of a statement that is offered, not for the purpose of showing the guilt or innocence of the accused, but merely to explain the conduct of the person to whom it was made. We think the Attorney General's reliance is misplaced.

In *Fuller,* the Commonwealth introduced a statement the victim made to the police concerning an assault made upon him by the defendant. The Commonwealth's purpose was to demonstrate that the police had reasonable ground to believe that a felony had been committed and to explain why the defendant was arrested without a warrant. But here, despite assurances to the contrary, the note was introduced and used by the Commonwealth to prove the truth of its contents, *i.e.,* that a drug sale had been consummated and that Tammy Donahue was personally involved in the drug distribution operation.

The record reveals that throughout the entire trial, including the opening statement, the presentation of the evidence, and its closing and rebuttal arguments, the Commonwealth made repeated references to the contents of the note and the fact that the $10 was never found. Thus, there is no merit to the Attorney General's claim that the note was introduced solely to show that it was uttered without regard to its truth or falsity.

We dispose of the Attorney General's next contention in a summary fashion. He argues that even if the Commonwealth im-

properly relied upon the note to show its truthfulness, this point was waived because in none of those instances did Donahue object. He overlooks the fact that when the Commonwealth introduced the note the trial court admitted it into evidence over the vigorous objection of Donahue's attorney. As Donahue argued at bar, once the trial court had ruled to admit the note into evidence, renewal of the grounds of her objection *each time* the Commonwealth made reference to the note was unnecessary. *See Washington-Virginia Railroad Co.* v. *Deahl,* 126 Va. 141, 153, 100 S.E. 840, 844 (1919).

Having concluded that the note was hearsay, we must next decide whether it was admissible under an exception to the hearsay rule.

The first exception mentioned by the Attorney General is the "present sense impression" exception. He relies primarily upon the following language in *Scott and Boyd* v. *Shelor,* 69 Va. (28 Gratt.) 891, 896 (1877):

> When any act done by any person is a fact in issue, or is relevant to the issue, the following facts (among others) are relevant—that is to say, all statements made by or to that person accompanying and explaining such act. [Citation omitted.]

In that malicious prosecution case, the defense attorney unsuccessfully sought to introduce certain out-of-court statements. The utterances were made by the defendants to the marshal sent to arrest the plaintiff. The statements pertained to the defendants' disposition toward the plaintiff's prosecution on charges of uttering a counterfeit treasury note with intent to defraud. Applying the hearsay rule, we upheld the trial court's exclusion of this testimony because the sole purpose for which it was offered was to introduce a narrative statement given by the defendants relating to the prosecution that was already in progress. The defendant's feelings at that point clearly failed to accompany or explain their earlier complaint that led to the plaintiff's arrest and prosecution.

Relying upon *Deitz* v. *Whyte,* 131 Va. 19, 27, 109 S.E. 212, 215 (1921), the Attorney General argues that the timing of the note was a jury question. There, Whyte was allowed to testify concerning the contents of a letter of instruction he had written to the superintendent of a farm; the letter was sent by the same mes-

senger who had transported Whyte's livestock to the farm. We held that the letter was explanatory of the delivery of the livestock; that whether it was actually delivered with them or at a later time was a jury question; and that the contents of the letter were properly received into evidence as an exception to the hearsay rule.

In contrast, the evidence here, like that in *Scott and Boyd* v. *Shelor, supra,* reveals that the note was more akin to a narrative statement than the contemporaneous declaration found in *Deitz*. Consequently, we hold that the "present sense impression" exception is inapplicable here.

■ The other exception to the hearsay rule used by the Attorney General is the co-conspirator exception mentioned in *Anderson* v. *Commonwealth,* 215 Va. 21, 24, 205 S.E.2d 393, 395 (1974). In *Anderson,* we held that declarations made out of a defendant's presence were admissible as declarations by a co-conspirator, provided that the evidence establishes a *prima facie* case of conspiracy. The only evidence suggesting a conspiracy to *distribute drugs* here would be that inferred from the note itself. Thus, the requisite *prima facie* case of conspiracy was never established and the contested note was not admissible under the co-conspirator exception.

■ Lastly, the Attorney General argues that any error in the introduction and use of the note was harmless beyond a reasonable doubt. We disagree. It cannot be said to what extent the jury may have been influenced by the introduction and use of the handwritten note. *Dunn* v. *Strong.* 216 Va. 205, 217, S.E.2d 831 (1975).

## II. *Evidence of Prior Criminal Act.*

■ The trial court, in holding that Officer Peralta's testimony relating to Donahue's prior arrest and conviction was admissible, stated that it was probative of her intent to distribute drugs. The court relied upon two federal cases, *United States* v. *Samuel,* 431 F.2d 610 (4th Cir. 1970), and *United States* v. *Hogan,* 486 F.2d 222 (4th Cir. 1973), *cert. denied,* 416 U.S. 941 (1974), and one of our decisions, *Dorantes* v. *Commonwealth,* 222 Va. 383, 281 S.E.2d 823 (1981).

In *Samuel,* the chief prosecution witness, a fellow inmate of the defendant, was allowed to testify that he had previously bought narcotics from the defendant. In its charge, the trial court in-

structed the jury that this evidence could be considered solely in determining defendant's intent and to show his action was willful and not a mistake or accident, but was not to be considered by the jury in determining whether the defendant did the act for which he was charged. The Fourth Circuit, in holding the challenged evidence admissible, stated that this evidence of a prior drug sale fell within two permissible uses: motive and lack of innocent action.

Citing *Samuel,* the *Hogan* court affirmed a conviction of distribution of heroin where the prosecution was allowed to introduce the details of prior heroin transactions, to exhibit the heroin seized earlier, and to allow witnesses to testify that the appearance and packaging of the heroin resembled the drugs involved in the present charges.

We have considered the Fourth Circuit's conclusion on this issue, but the established rule in Virginia is to the contrary. In *Kirkpatrick* v. *Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), we said:

> The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. It is also well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment. However, the exceptions to the general rule are equally as well established. Evidence of other offenses is admitted . . . if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes

and where there is only such incidental disclosure of other offenses. [Citations omitted.]

The court below also relied on *Dorantes v. Commonwealth, supra*. There, in a single jury trial, the defendant was convicted of two charges of robbery and one charge each of conspiracy to commit robbery and entering a banking house while armed with a deadly weapon with intent to commit larceny. We held that the introduction of evidence of prior robberies in another banking institution in the same vicinity was admissible under the "general scheme" exception recognized in *Kirkpatrick*. We reasoned that this evidence of other criminal acts was admitted "to establish the conspiracy to rob banking institutions in the Arlington area . . ." *Id*. at 385, 281 S.E.2d at 824.

We do not believe, however, that any of the *Kirkpatrick* exceptions are applicable here. Instead, our decision is controlled by *Boyd v. Commonwealth,* 213 Va. 52, 189 S.E.2d 359 (1972). There, the defendant sold two capsules of heroin to a police officer. Over the defendant's objection, the officer was permitted to testify that he had witnessed two previous sales of heroin by the defendant a few days before. The trial court instructed the jury that the evidence of the earlier sales could not be considered as evidence of guilt of the instant heroin sale but could be considered on the issue whether the prior offenses constituted a part of a general scheme of which the crime charged was a part.

We reversed, holding that the prior sales of heroin were unrelated to the sale for which defendant was on trial; that none of the exceptions to the general rule outlined in *Kirkpatrick* were applicable; and that the prejudicial effect of the disputed evidence outweighed its probative value. *Accord Eccles v. Commonwealth,* 214 Va. 20, 197 S.E.2d 332 (1973). "Since we have no way of knowing the effect the court's admission of testimony as to defendant's prior criminal acts . . . had upon the minds of the jury, we cannot say that the error was not prejudicial." *Id*. at 22-23, 197 S.E.2d at 333.

For the foregoing reasons, we hold that the handwritten note and the evidence of prior drug sales were not admissible. The judgment appealed from will be reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*