PRESENT:  All the Justices

DWAYNE EDWARD GUILL

v.  Record No. 971153   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        January 9, 1998
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this criminal appeal, the dispositive issue is whether the trial court erred in admitting evidence of another crime committed by the defendant for the purpose of proving his intent to commit the crime charged.

Dwayne Edward Guill was indicted for unlawfully and feloniously breaking and entering a dwelling house in the nighttime with the intent to commit murder, rape, or robbery in violation of Code § 18.2-90.  He was tried by the Circuit Court of Charlotte County, sitting without a jury, and was found guilty as charged.  The trial court sentenced Guill to confinement in the penitentiary for 20 years, with execution of 5 years suspended.

We state the evidence taken at trial in the light most favorable to the Commonwealth, the prevailing party below.  Roach v. Commonwealth, 251 Va. 324, 329, 468 S.E.2d 98, 101, cert. denied, 519 U.S. ___, 117 S.Ct. 365 (1996); Graham v. Commonwealth, 250 Va. 79, 81, 459 S.E.2d 97, 98, cert. denied, 516 U.S. 997 (1995).  On May 22, 1995, at about 2:00 a.m., Guill broke and entered the home of Danny and Donna Crews who were asleep in their bedroom.  The Crews' two daughters, ages five and seven, were also in the house at the time.  The girls shared a bed in a ground floor bedroom, which was illuminated both by an

outdoor safety light and by a light inside the house.

Mr. Crews testified that he awakened and heard his daughters talking. When he arose and walked into the kitchen, he saw Guill, a stranger, backing out of the girls' bedroom. Crews confronted Guill, stating, "[M]an, what in the hell are you doing in my house." In response, Guill reached for his back pocket with his right hand and said, "I'll cut your f_ _ _ing head off." After the two men looked at each other "for a second or two," Guill ran out the back door.

Mr. Crews stated that although there were open ground floor windows in the living room and the master bedroom, Guill entered the house by taking a twelve-foot ladder from the basement and climbing through a bathroom window. The open windows were located in a portion of the house which was illuminated by exterior light, while there were no exterior lights in the area near the bathroom window. In a hallway just outside the bathroom, Mrs. Crews had left a purse containing $200 in plain view, as well as her keys.

Over Guill's objection, the Commonwealth called a witness who stated that, in 1985 when she was 16 years old, Guill broke and entered the house in which she was sharing an upstairs room with her 15 year-old female cousin. The witness testified that she and her cousin were asleep when Guill, a stranger to the two girls, got into the witness' bed with his shirt off, kissed her, and attempted to rape her. According to the witness, Guill "told my cousin that if I [did not] be quiet he was going to kill me."

Three weeks after the incident at the Crews' residence,

Guill was arrested. He made a statement to the police in which he gave the following explanation. He stated that he stopped at the Crews' house because his vehicle "ran out of gas." He first attempted to get some gasoline out of a truck on the Crews' property and then broke into their house to find keys to open some locked gas tanks.

Guill also told the police that he entered the house by using a ladder to go through a bathroom window. Once in the house, he looked around for keys "and heard the kid wake up." When he told her to be quiet, she started crying. Guill stated that, at this point, he "got up and went out of the room and as I did I met the man." Guill did not testify at the trial.

The trial court found the defendant guilty after ruling that evidence of the 1985 crime was admissible because it was of "such . . . a similar nature" to the present offense. The Court of Appeals affirmed the trial court's judgment in an unpublished opinion, holding that the 1985 crime and the present offense were "sufficiently similar to be probative of [the defendant's] intent," and that the evidence of his prior conduct was admissible for the "narrow purpose of proving, elucidating, or explaining [the defendant's] intent."

On appeal to this Court, the defendant argues that evidence of the 1985 crime was irrelevant because the facts of the present offense contain no evidence of an intent to commit rape. The defendant also asserts that the trial court erred in admitting evidence of the 1985 crime because it was dissimilar to the present offense.

In response, the Commonwealth asserts that evidence of the 1985 crime was admissible to prove the defendant's intent in the crime charged based on his conduct on the prior occasion. We disagree with the Commonwealth and hold that the Court of Appeals erred in affirming the trial court's ruling on this issue.

Evidence that shows or tends to show a defendant has committed a prior crime generally is inadmissible to prove the crime charged. Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988), cert. denied, 490 U.S. 1009 (1989); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). Such evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant. See Boggs v. Commonwealth, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957). There are several exceptions to the general rule excluding this type of evidence.

Evidence of "other crimes" is relevant and admissible if it tends to prove any element of the offense charged. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. Thus, evidence of other crimes is allowed when it tends to prove motive, intent, or knowledge of the defendant. Id. Among other exceptions, evidence of other crimes also is allowed if relevant to show the perpetrator's identity when some aspects of the prior crime are so distinctive or idiosyncratic that the fact finder reasonably could infer that the same person committed both crimes. Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616, cert. denied, 498 U.S. 908 (1990).

Admission of evidence under these exceptions, however, is subject to the further requirement that the legitimate probative value of the evidence must exceed the incidental prejudice caused the defendant. Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983). Further, the admission of such "other crimes" evidence is prohibited when its only purpose is to show that the defendant has a propensity to commit crimes or a particular type of crime and, therefore, probably committed the offense for which he is being tried. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805.

The element of the crime in dispute in the present case is that of the defendant's intent. Intent is the purpose formed in a person's mind that may, and often must, be inferred from the particular facts and circumstances of a case. Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). Like any other element of a crime, intent must be proved as a matter of fact and may not be the subject of surmise and speculation. Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955).

As we stated in Kirkpatrick, 211 Va. at 273, 176 S.E.2d at 805, the leading case on the principles involved here is Walker v. Commonwealth, 28 Va. (1 Leigh) 574 (1829). There, a defendant was indicted for larceny of a watch and, at trial, evidence was admitted that at one time he had stolen a coat. In setting aside his conviction, we held that this evidence was irrelevant and inadmissible to prove the defendant's intent in the crime charged, because the evidence did not have "such necessary

conne[ct]ion with the transaction then before the court as to be inseparable from it."  Id. at 580.  We explained that

> if the circumstances [of the other event] have no intimate conne[ct]ion with the main fact; if they constitute no link in the chain of evidence . . . they ought to be excluded, because they are irrelevant; [and] if they denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to [cause] prejudice.

Id. at 577.


In Barber v. Commonwealth, 182 Va. 858, 30 S.E.2d 565 (1944), an appeal of an attempted rape conviction, we again applied these principles.  The trial court had allowed evidence that the defendant committed an attempted rape on a different victim for the purpose of showing the defendant's intent in the crime charged.

We reversed the defendant's conviction, stating that it is improper to use evidence that a defendant has committed another crime when it has "no connection with the one under investigation.  Such other acts of criminality . . . are not legally relevant and should not be [used] to prejudice the defendant or to create a probability of guilt."  Id. at 866, 30 S.E.2d at 568 (internal quotation marks omitted).  We explained that the test for admission of evidence of other crimes is met when there is "a causal relation or logical and natural connection between the two acts, or they . . . form parts of one transaction."  Id. at 868, 30 S.E.2d at 569 (internal quotation marks omitted); see also Day v. Commonwealth, 196 Va. 907, 912-13, 86 S.E.2d 23, 26 (1955).

We again applied these principles in Donahue v.

Commonwealth, 225 Va. 145, 300 S.E.2d 768 (1983). There, the trial court had allowed evidence of the defendant's prior sale of phencyclidine (PCP) for the purpose of proving her intent to distribute PCP and marijuana in the crimes charged. The prior sale had occurred over one month before her arrest on the crimes charged. Id. at 149, 300 S.E.2d at 770.

We held that evidence of the prior sale of PCP was inadmissible to prove the defendant's intent because that evidence was unrelated to the crime charged and none of the other exceptions to the general rule barring admission of "other crimes" evidence was applicable. We also stated that the prejudicial effect of that evidence required its exclusion. Id. at 156, 300 S.E.2d at 774; see also Boyd v. Commonwealth, 213 Va. 52, 53, 189 S.E.2d 359, 360 (1972).

Applying these principles to the present case, we hold that evidence of the 1985 crime was unrelated to the crime charged. Like the "other crimes" evidence in the above cases, there was no causal relation or logical connection between the 1985 offense and the crime charged, nor did the two crimes form parts of one transaction. See Barber, 182 Va. at 868, 30 S.E.2d at 569; see also Kirkpatrick, 211 Va. at 273, 176 S.E.2d at 806; Day, 196 Va. at 912-13, 86 S.E.2d at 26; Walker, 28 Va. (1 Leigh) at 577. Therefore, evidence of the 1985 crime was not probative evidence of the defendant's intent in the crime charged and was irrelevant and inadmissible for purposes of proving that intent. See Donahue, 225 Va. at 155-56, 300 S.E.2d at 773-74; Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805; Day, 196 Va. at 912-13, 86

S.E.2d at 26; Barber, 182 Va. at 866-68, 30 S.E.2d at 568-69; Walker, 28 Va. (1 Leigh) at 577.

We also hold that evidence of the 1985 crime is not admissible under any other exception to the general rule barring admission of "other crimes" evidence. Specifically, we hold that the trial court erred in ruling that the evidence was admissible because it was of "such a similar nature" to the offense charged. In Spencer, we held that when the identity of a perpetrator is at issue, evidence of another crime may be admitted to prove the actor's identity if the prior crime bears "a singular strong resemblance to the pattern of the offense charged" and is sufficiently idiosyncratic in relation to that offense to permit an inference of a pattern for proof purposes. 240 Va. at 90, 393 S.E.2d at 616 (internal quotation marks omitted).

Assuming, without deciding, that this test is applicable here when the identity of the perpetrator is known, we hold that the test is not met. Although a few of the facts in the two burglaries are similar, the crimes do not have any idiosyncratic characteristics.

As stated above, in the 1985 crime, the defendant entered a house through a rear door and proceeded to an upstairs bedroom occupied by two girls, ages 15 and 16. Here, the defendant used a ladder to crawl through a ground floor bathroom window after punching holes in the window screen. He then walked into the ground floor bedroom of two girls who were five and seven years of age.

In the 1985 crime, the defendant got into the girls' bed and

kissed and attempted to rape one of them.  Here, there is no evidence that the defendant got into the girls' bed or touched either girl in any manner.  Instead, the evidence shows only that the defendant "got up" before he left the girls' room.

Although the defendant threatened the girls' father in this case, he threatened the witness in the 1985 crime.  Moreover, we note that conduct of this nature unfortunately is common, rather than idiosyncratic, in this type of crime.

Based on the above factual differences, evidence of the 1985 crime was inadmissible under a Spencer analysis because that offense was not idiosyncratic in relation to the facts of the present offense.  As such, the evidence lacked a logical relationship to the offense charged and, thus, was irrelevant and showed only the defendant's propensity to commit the crime charged.  See Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. Since this evidence was inadmissible and had no probative value, we hold that its admission caused undue prejudice to the defendant.  See Donahue v. Commonwealth, 225 Va. at 156, 300 S.E.2d at 774.[*]

For these reasons, we will reverse the Court of Appeals' judgment and remand the case to the Court with direction that the matter be remanded to the trial court for a new trial, if the Commonwealth be so advised, consistent with the principles set forth in this opinion.

_____

[*] Since our holding requires reversal of this case, we do not reach the defendant's remaining assignment of error challenging the sufficiency of the evidence.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

The main issue in this criminal appeal is whether the trial court erroneously admitted so-called "other crimes" evidence on the question of the accused's specific intent to commit the offense charged.

Dwayne Edward Guill was tried by the Circuit Court of Charlotte County, sitting without a jury, upon an indictment for unlawfully and feloniously breaking and entering a dwelling house in the nighttime with the intent to commit murder, rape, or robbery in violation of Code § 18.2-90. Defendant was found guilty as charged and was sentenced to confinement in the penitentiary for 20 years, with execution of 5 years suspended.

Upon review, a panel of the Court of Appeals unanimously affirmed the conviction in an unpublished opinion. The Court of Appeals concluded that the trial court correctly admitted evidence regarding defendant's 1985 conviction for breaking and entering a dwelling house in the nighttime with the intent to commit rape, and correctly found the evidence sufficient to sustain the instant conviction.

The Court awarded defendant this appeal. According to settled principles of appellate review, I shall summarize the facts in the light most favorable to the Commonwealth.

On May 22, 1995, Danny Crews, his wife, and their two daughters, five and seven years of age, resided in the Drakes

Branch area of Charlotte County.  On that date, near 2:00 a.m., the parents awoke in their ground level bedroom to the sound of the daughters talking in a separate bedroom, also at ground level.  As the father approached the children's room, the defendant "was backing out of that bedroom," which was illuminated by a security light mounted on a pole outside the home.

The father said to defendant, a stranger, "[M]an, what in the hell are you doing in my house."  According to the father, defendant "reached for his back pocket with his right hand" and threatened to cut off the father's head.  The two men stood facing each other "for a second or two."  Then defendant "fled out of the back door," breaking two door locks as he ran. Defendant left the scene on a motorcycle parked nearby.

Defendant, age 34, was arrested three weeks later.  "At first he denied any involvement in the burglary or break-in and later on he did admit that he went in the house," according to the investigating officer.

In a statement to the police, defendant, who did not testify at trial, claimed that while riding the motorcycle, he "ran out of gas and that he was in the house looking for keys to the gas tanks" of trucks parked in the yard of the Crews' home. Defendant stated he had found "a little" gas but was searching for more in a locked tank "on the back of a pickup truck."

Defendant further stated he gained access to the home by using a ladder and crawling through a bathroom window after cutting the screen.  Once inside, he said, "I was looking around

for the keys and heard the kid wake up."  Defendant stated that while he was in the children's room, "I told her to be quiet . . . And then she started crying."  Asked what happened next, defendant stated:  "I got up and went out of the room and as I did I met the man."

The investigation revealed that, at the time of the incident, ground floor windows were open that would have allowed defendant to enter the home without use of a ladder.  These windows, however, were in a portion of the home that was illuminated by the exterior light, while the area near the bathroom window was dark.

In addition, a desk and chair in an illuminated hall area were in the path of one proceeding from the bathroom to the girls' room.  Mrs. Crews' purse containing keys was in the chair, and $200 in cash "was sticking up out of [the] pocketbook"; it was not disturbed during the incident.  Also, prior to the incident, the door to the girls' room "was halfway open" and a light burning in the kitchen shone into their room.

At trial, the prosecution presented, over defendant's objection, the testimony of a woman who was the victim of a breaking and entering with intent to commit rape perpetrated by defendant in June of 1985.  That crime occurred during the nighttime in a Chase City residence when the witness, age 16 at the time, occupied an upstairs bedroom with her 15-year-old female cousin.

The defendant, a stranger to the girls, unlawfully entered the dwelling through a rear door, proceeded past a downstairs

bedroom occupied by an adult, entered the girls' bedroom wearing only "shorts," got into their bed, kissed one of the girls, attempted to rape the witness, and left the home when the girls fought him and screamed for help. According to the witness, defendant "told my cousin that if I don't be quiet he was going to kill me." Subsequently, defendant was convicted in Mecklenburg County of that offense.

In this appeal, defendant contends the Court of Appeals erred in affirming the action of the trial court in admitting the evidence of the 1985 crime. I disagree.

Generally, proof showing an accused committed other crimes at other times is incompetent and inadmissible for the purpose of establishing commission of the particular crime charged. Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988), cert. denied, 490 U.S. 1009 (1989); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). Such evidence is admissible, however, when "it tends to prove any relevant element of the offense charged," such as when the accused's intent is at issue. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. Accord Jennings v. Commonwealth, 20 Va. App. 9, 15, 454 S.E.2d 752, 755 (1995). Nevertheless, evidence of other crimes is admissible only when "the legitimate probative value outweighs the incidental prejudice to the accused." Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

In the present case, under the indictment, the Commonwealth had the burden to prove beyond a reasonable doubt that defendant broke and entered the Crews' residence in the nighttime with the

specific intent to commit rape.  See Code § 18.2-90; Snyder v. Commonwealth, 220 Va. 792, 798, 263 S.E.2d 55, 59 (1980). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case."  Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).  This state of mind may be shown by the offender's acts and conduct.  Id.

Here, there is no dispute defendant broke and entered the Crews' dwelling in the nighttime.  The only contested element of the offense charged is whether defendant's intent, in entering the home, was to rape either or both of the girls, as opposed to an intent to procure fuel for his motorcycle, as he claimed.  The question then becomes whether evidence of the 1985 crime was relevant and tended to prove defendant's specific intent to commit the crime.

Admissibility of "other crimes" evidence does not necessarily turn on the proximity of the prior acts to the crime charged.  Indeed, the Court of Appeals has approved the use of such evidence when the prior conduct was ten and twenty years in the past.  Jennings, 20 Va. App. at 14, 454 S.E.2d at 754.

Also, this Court has rejected the notion that when evidence of other crimes is offered to prove modus operandi, an exact resemblance to the crime on trial as to constitute a "signature" is necessary to qualify such evidence for admission.  Rather, the Court has said it is sufficient if the evidence of other crimes bears "a singular strong resemblance to the pattern of the offense charged."  Spencer v. Commonwealth, 240 Va. 78, 90, 393

S.E.2d 609, 616, <u>cert</u>. <u>denied</u>, 498 U.S. 908 (1990) (internal quotation marks omitted). The Court has explained that the test for admissibility is met when the prior crime is sufficiently idiosyncratic to permit an inference of a pattern for proof purposes. <u>Id.</u> The present case is not a <u>modus</u> <u>operandi</u> case in which an effort is made to establish the identity of the accused by showing the probability of a common perpetrator. However, I perceive no reason why the same test should not apply when, as here, the perpetrator's identity is known and his intent is in question.

Here, the evidence of the 1985 crime bears a singular strong resemblance to the pattern of the offense charged and is sufficiently distinctive to permit an inference of a pattern of behavior. For example, in 1985, as here, defendant broke and entered a residence. In 1985, as here, the crime was committed in the nighttime. In 1985, as here, the defendant proceeded past an adult's bedroom en route to a bedroom occupied by young girls. In 1985, the girls were young, 15 and 16 years of age. Here, the girls also were young, five and seven years of age.

In 1985, defendant tried to rape one of the girls. Here, the defendant did something in the bedroom, while he was there an undetermined period, that required him to "get up" before he left the room. A reasonable inference from that proven fact is that defendant sat on the girls' bed in order to molest either or both of them. Although that proven fact may give rise to other inferences, such as, that defendant intended to commit an assault and battery, the Court must accept on appeal the inference that

is most favorable to the Commonwealth.

In 1985, the girls screamed and defendant threatened to kill one of them.  Here, the girls cried and defendant threatened to kill the father.

Therefore, I would hold that proof of the 1985 crime was relevant because it tended to establish the defendant's specific intent.  Further, the legitimate probative value of the evidence outweighs the incidental prejudice to the defendant.  "The responsibility for balancing these competing considerations is largely within the sound discretion of the trial judge. . . . And a trial court's discretionary ruling will not be disturbed on appeal absent a clear abuse of discretion."  Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).  Hence, the evidence was admissible, and the Court of Appeals did not err in affirming the trial court's ruling on that issue.

My analysis of the first issue effectively disposes of the second.  Defendant contends the evidence was insufficient to convict him of the crime charged.  I disagree.

The trial court was entitled to infer that defendant, given his propensity to commit sexual crimes involving young girls, entered the home and remained in the girls' bedroom intending, not to look for keys, but to rape either or both of them. Defendant's activity was wholly inconsistent with a quest for fuel.

Defendant observed the girls sleeping as he was standing in the yard near their illuminated room.  At that point in time, he already had obtained "a little" gasoline, sufficient to enable

him to drive a distance from the scene after he fled the home, according to the evidence. Nevertheless, according to his story, he risked entering the home to search for still more fuel. One wonders why he did not just drive away using the gas he had found.

After breaking and entering the home through a dark area to avoid detection, he moved through a lighted hall toward the girls' room. He passed an open purse containing both keys and money, with which he readily could have obtained the gas he allegedly sought. He remained in the girls' room for an indeterminate period of time and "got up" in order to leave. As I have said, reasonably to be inferred from all the circumstances is the conclusion that defendant entered the home with the specific intent to commit rape.

Consequently, I would hold that the Court of Appeals did not err, and I would affirm the judgment appealed from.