# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

· v.

Mustafa Salaam

August 25, 2004

Case No. (Criminal) CR03-4625

BY JUDGE CHARLES E. POSTON

The Defendant, Mustafa Salaam, faces trial upon an indictment charging him with the murder of Juawann Coward. The Court earlier advised counsel that it had denied the Defendant's motion *in limine* through which he seeks to prohibit the Commonwealth from presenting evidence concerning a dying declaration in which the deceased identified the defendant as his killer. This letter opinion is written to memorialize the grounds upon which the Court denied the motion.

· This is the second motion *in limine* attacking the dying declaration. The first was argued on March 15, 2004, before the Honorable John C. Morrison, Jr., who denied the motion following an *ore tenus* hearing. After publication of the United States Supreme Court opinion in *Crawford v. Washington*, 124 S.Ct. 1354 (2004), decided March 8, 2004, the Defendant renewed his motion. The Court will not revisit Judge Morrison's pre-*Crawford* ruling and will examine the admissibility of the dying declaration solely in light of *Crawford*'s holding.

## The Facts[1]

In the nighttime hours of October 15, 1999, Nina Felicia Fenner, age 17, observed a fist fight between Salaam and Juawann Coward. About ten minutes

---

[1] For purposes of this motion, the facts are taken from Nina Felicia Fenner=s testimony before Judge Morrison on March 15, 2004.

after the fight, Fenner saw Coward sustain several gunshot wounds and fall to the ground. She also observed blood on the ground as well as on his back. Fenner approached Coward but she asked him no questions and did not advise him of the seriousness of his condition. Fenner described Coward's "dying declaration" made to her at that time as follows:

> While he was on his hands and knees, he was saying, in breaking words, that he was shot and he was dying and Mustafa killed him. . . .

Transcript, page 6, line 8.[2]

> He was coughing and — that's it.

Transcript, page 7, line 8.

## Discussion

*Crawford* suggests two possibilities, indefinite to be sure, for the admission of dying declarations. First, if the Confrontation Clause incorporates an exception for dying declarations, they may be admitted. Second, those dying declarations that are non-testimonial in nature seem to be admissible if they meet the test prescribed in *Ohio v. Roberts*, 448 U.S. 56 (1980). The Commonwealth urges a third possibility: because the Defendant caused the deceased's death and, therefore, his unavailability, he forfeited his right to confrontation. Each of these arguments will be addressed *seriatim*.

### A. *Dying Declaration Exception*

Dying declarations were admissible early in the common law's development. One commentator has expressed a general summary of this exception to the hearsay rule:

> At early common law, the courts admitted the decedent's dying declarations in homicide prosecutions. The courts reasoned that there was a peculiar need for dying declarations in homicide prosecutions; the courts feared that, if they excluded the victim's dying declaration, the murderer might go free. The circumstantial guarantee of the trustworthiness of dying declarations is the declarant's sense of impending death; at the point of death, the

---

[2] All transcript references are found in the transcript of the hearing on March 15, 2004.

declarant should not have any reason to lie, and there is the theistic belief that the decedent will not want to face the Creator with a last lie on his or her lips.[3] At common law, the necessity for admitting the hearsay is that at the time of trial, the declarant was dead.

Imwinkelried, *Evidentiary Foundations*, § 10.15.

The earliest reported Virginia case addressing dying declarations saw no reason to justify the admissibility of these statements and simply restated the rule:

> In a case of murder, declarations of the deceased, when made *in extremis*, and when conscious of his situation, are admissible evidence against the accused, although the witness who deposed to his declarations, was rather of opinion that the deceased thought he would get well, other witnesses having deposed that he was conscious he could not recover.

*Gibson v. Commonwealth*, 4 Va. (2 Va. Cas.) 111, 121 (1817). Almost three decades later in a case presenting an issue closely related to the Defendant's motion, the Supreme Court of Virginia considered an appeal in which the appellee, among three issues on appeal, complained:

> That the admission of the dying declarations in evidence, is a violation of the bill of rights: the 8th article of which secures to every citizen charged with crime the right to be confronted with the witnesses against him.[4]

*Hill v. Commonwealth*, 43 Va. (2 Gratt.) 594, 597 (1845). The court found that the admissibility of dying declarations in homicide cases "has, for a long period of time, been recognized by the English Courts, and is now established by a series of incontrovertible adjudications." *Id.* at 614. Examining the roots of the use of dying declarations in homicide cases, the court looked to the English constitution:

---

[3] Another commentator has opined that "the idea that the dying declaration exception is justified because no one about to meet his or her 'Maker' would do so with a lie upon his or her lips is nearly laughable. . . ." Friedman, *Criminal Justice*, vol. 10, no. 2, Summer 2004, page 6.

[4] This is a reference to the Virginia Bill of Rights which reads in pertinent part: "That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses. . . ." It is found today in Article 1, Ə 8, of the Virginia Constitution.

> they do not permit that a man should be made to run the risk of a trial, but upon the declaration of twelve persons at least, (the grand jury). Whether he be in prison, or on his trial, they never for an instant refuse free access to those who have either advice or comfort to give him. They even allow him to summon all who have any thing to say in his favour. And lastly, what is of very great importance, the witnesses against him must deliver their testimony in his presence. Notwithstanding this clear and decided language of the English constitution or bill of rights, the Courts there, during a long series of years, and on many occasions, as before intimated, have sanctioned the competency of dying declarations.

*Id.* at 615. The court, reciting the adoption of the Virginia Bill of Rights in 1776, held that the admission of dying declarations had long been established "as a necessary element in our judicial administration." *Id.*

Clearly the use of dying declarations in homicide cases was well-established before the American Revolution. It is said that *Rex v. Reason*, 1 Strange 499, 93 Eng. Rep. 659, 14 Howell State Trials 1, decided in 1722, is the earliest reported English case on the subject, *Pippen v. Commonwealth*, 117 Va. 919, 924 (1915), and Virginia's rule concerning the admissibility of dying declarations is rather clearly stated in *Pippen*:

> To render dying declarations admissible evidence, they must be shown to have been made when the declarant is under a sense of impending death, and without any hope or expectation of recovery. Whether so made or not is a preliminary question to be determined by the court in all the circumstances of the case. But when admitted the weight or credit to which such declarations are entitled is a question for the jury.

*Id.* at 925 (citations omitted).

From the cases already cited, it is clear that the "exception" relating to dying declarations had been firmly established at least a century and a half before the founding. Indeed, *Crawford* itself recognizes this state of the law:

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the *Sixth Amendment* incorporates an exception for testimonial dying

declarations. If this exception must be accepted on historical grounds, it is *sui generis*.

*Id*. at 1366, n. 6 (citations omitted).

The Court, then, holds that the admissibility of dying declarations was firmly established as an exception to the hearsay rule at the time of the founding of the nation and is incorporated into the Sixth Amendment's Confrontation Clause. This holding applies to both testimonial and non-testimonial dying declarations.

## B. *Non-testimonial Dying Declarations*

At the hearing on March 15, 2004, Judge Morrison decided that the deceased's dying declaration was admissible.[5] He did not, however, consider the statement's admissibility in light of the *Crawford* interpretation of the Sixth Amendment's Confrontation Clause: "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." *Id*. at 1357. Until *Crawford*, certain exceptions to the hearsay rule, and, concurrently, to the right of confrontation, were admissible. Earlier, the United States Supreme Court had approved the following criteria for such exceptions:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.

*Crawford* does not reject totally the *Roberts* rule but makes it applicable only to "non-testimonial" statements. In the case at bar, Salaam contends that Coward's statement to Fenner was testimonial in nature, and, because Coward was not subjected to cross-examination, admission of the statement would

---

[5] Assuming, *arguendo*, that Coward=s statement is not admissible as a dying declaration, it clearly qualifies as an excited utterance exception to the hearsay rule. *See Clark v. Commonwealth*, 235 Va. 287, 292, 367 S.E.2d 483, 487 (1988) (citation omitted) (" A homicide victim=s statement >made a short time after he has been mortally wounded which obviously [has] not been concocted or premeditated charging the defendant with the act= is admissible as an excited utterance." )

violate the Confrontation Clause of the United States Constitution. The Commonwealth argues that the victim's statement was non-testimonial and is therefore admissible under *Crawford*'s reasoning.

According to *Crawford*, the Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted. *Crawford v. Washington,* 124 S. Ct. 1354 (2004). Thus, "the admissibility of a hearsay statement under the Confrontation Clause now necessarily depends on whether the statement is testimonial in nature." *City of Las Vegas v. Walsh,* 91 P.3d 591, 593-94 (Nevada 2004). If there were a prior opportunity to cross-examine an unavailable declarant, his testimonial hearsay is admissible. *Crawford,* 124 S. Ct. at 1373. On the other hand, if the statement is non-testimonial then the Confrontation Clause is not implicated and the statement's admissibility is merely a matter of applying state law regarding hearsay and various hearsay exceptions. *Id.* at 1374.

The Supreme Court in *Crawford* stated that "testimony" "is typically ' [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact'." *Id.,* at 1364 (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828)). Although the Court expressly declined to "spell out a comprehensive definition of >testimonial'," *id.,* it clearly held that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* In addition, the Court set forth a core class of existing "testimonial" statements. These statements include "(1) ex parte in-court testimony or its functional equivalent ... (2) extrajudicial statements ... contained in formalized testimonial materials ... and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.,* at 1364 (citations omitted).

Since *Crawford*, several courts have issued decisions addressing the admissibility of hearsay statements under the new framework. In *Fowler v. Indiana,* 809 N.E.2d 960 (Ind. App. 2004), the Indiana Court of Appeals concluded that an excited utterance was non-testimonial. In this case an officer was permitted to testify regarding a conversation he had with the victim who was the defendant's wife. Upon arrival at her residence approximately five minutes after receiving a domestic disturbance dispatch, the officer asked her what happened. The victim, who was moaning and crying, responded that her husband had punched her in the face several times. At trial when the victim refused to testify against her husband, the trial court allowed the officer to testify to the victim's statements even though the defendant objected.

The court of appeals affirmed the trial court and held that "when police arrive at the scene of an incident in response to a request for assistance and

begin informally questioning those nearby immediately thereafter in order to determine what had happened, statements given in response thereto are not >testimonial'." *Id.*, at 964. The court reasoned that in light of the recent *Crawford* decision, "the common denominator ... of what constitutes a >testimonial' statement is the official and formal quality of such a statement." *Id.*, at 963. Further an "unrehearsed statement made without reflection or deliberation, as required to be an >excited utterance,' is not >testimonial' in that such a statement, by definition, has not been made in contemplation of its use in a future trial." *Id.* at 964 (citations omitted).

Similarly, the Georgia Supreme Court, in *Demons v. State*, 585 S.E.2d 76 (Ga. 2004), ruled that, a deceased victim's statements made during a conversation with a friend before the commission of the crime were not "testimonial." *Id.*, at 80. The defendant and the victim had been involved in a homosexual relationship for many years when the defendant began threatening and beating the victim, placing him in fear for his life. Two days before his death, the distressed and badly bruised victim, told a co-worker that the defendant had beaten him and that the defendant said he was going to kill him. The trial court allowed the co-worker to testify at defendant's murder trial regarding her conversation with the victim, and the Georgia Supreme Court affirmed the decision. The court held that the statements were not "testimonial" under the *Crawford* holding because they "were not remotely similar to such prior testimony or police interrogation, as they were made in a conversation with a friend, before the commission of any crime, and without any reasonable expectation that the would be used at later trial." *Id.* (citations omitted).

Finally, in *North Carolina v. Forrest*, 596 S.E.2d 22 (N.C. 2004), the Court of Appeals of North Carolina approved admitting statements made by a victim to a police officer following the defendant's arrest. Immediately after being rescued by the police and while shaking, crying, and bleeding, the victim, who had been kidnapped by the defendant, told an officer what the defendant had done to her. The officer did not question the victim until after she started talking. After applying these facts to the *Crawford* opinion, the court held that the Confrontation Clause does not prohibit the admission of spontaneous statements from an unavailable witness. *Id.*, at 27. The court reasoned that "just as with a 911 call, a spontaneous statement made to police immediately after a rescue can be considered 'part of the criminal incident itself, rather than as part of the prosecution that follows'." *Id.* (citations omitted).

In applying these considerations to the case at bar, several circumstances must be examined. First, Coward's statement was spontaneous. Because his declaration was made to Fenner immediately after being shot by Salaam, without time for reflection or deliberation, there is a strong indication that the

statement was truthful and unrehearsed. Second, Coward spoke the words while still under the stress of a traumatic incident. Minutes before making his statement, Coward sustained several gunshot wounds as a result of a fight with Salaam. After being shot and while lying on the ground, Coward spoke to Fenner. He was obviously under the stress of the gunshot wounds when he made that statement; therefore, there is no indication that the statement was made in contemplation of its use in a future trial. Finally, Coward's statement was not the result of any interrogation, whether by a private person or a police officer. When seventeen-year old Fenner approached Coward, she neither asked him any questions nor advised him of the seriousness of the condition; instead, Coward made the statement on his own initiative. The Court, then, concludes that the statement was part of the criminal incident itself, rather than as part of the following prosecution.

In summary, the Court holds that the statement made by Coward did not in any way constitute "testimonial" hearsay. Coward "was not providing a formal statement, deposition, or affidavit, was not aware that he was bearing witness, and was not aware that his utterances might impact further legal proceedings." *Forrest*, 596 S.E.2d at 27 (citation omitted). Accordingly, Judge Morrison's pre-*Crawford* ruling denying Defendant's motion *in limine* and admitting Coward's hearsay testimony will be left undisturbed.

## C. *Forfeiture of Confrontation Right*

Despite holding that Coward's statement is admissible as both a dying declaration exception to the *Crawford* decision and as a non-testimonial statement, the Court will now address the issue of whether the Defendant forfeited his right to confrontation by causing the death of the victim.

Even though the United States Constitution guarantees persons accused of crimes the right to confront witnesses presented against them, this right may be waived. U.S. Const., amends. VI and XIV. Under certain circumstances, a defendant, by his own misconduct, may implicitly waive his right to confront witnesses against him.

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

*Reynolds v. United States*, 98 U.S. 145, 158-59 (1879). "Thus, if a witness' silence is procured by the defendant himself, whether by chicanery ... by threats ... or by actual violence or murder ... the defendant cannot then assert his confrontation clause rights in order to prevent ... [statements] of that witness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect." *United States v. Mastrangelo*, 693 F.2d 269, 272B73 (2d Cir. 1982).

Through *Crawford*, the Supreme Court reinforced its earlier holding in *Reynolds*. The Court stated that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." *Crawford*, 124 S. Ct. at 1370 (citing *Reynolds*, 98 U.S. at 158-159). "When confrontation becomes impossible due to the actions of the very person who would assert the right, logic dictates that the right has been waived. The law simply cannot countenance a defendant deriving benefits from murdering the chief witness against him." *Kansas v. Meeks*, 277 Kan. 609, 615, 88 P.3d 789, 794 (2004) (citations omitted).

In *Meeks*, the Kansas Supreme Court addressed whether admission of a statement by a deceased was improper because it violated a defendant's confrontation right as set forth in *Crawford*. The court observed that "if the trial court determines as a threshold matter that the reason the victim cannot testify at trial is that the accused murdered her, then the accused should be deemed to have forfeited the confrontation right, even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable." *Id.* "A waiver of the right to confrontation based upon the procurement of the absence of the witness also constitutes a forfeiture of any hearsay objections to prior statements of the absent witness." *Id.*

The circuits have adopted varying tests for determining whether a forfeiture has occurred. Some circuits apply a clear and convincing standard, *see United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. 1982), while others use a preponderance of the evidence analysis. *See United States v. Houlihan*, 92 F.3d 1271, 1290 (1st Cir. 1996). Although the Fourth Circuit has considered the issue on several occasions, it has not yet squarely addressed the appropriate burden of proof. In a recent decision, the Fourth Circuit held that "under either a clear and convincing standard or a preponderance standard, we cannot say the district court abused its discretion in admitting the statements under the waiver-by-wrongdoing doctrine." *United States v. Celestine*, 43 Fed. Appx. 586, 595 (4th Cir. 2002).

In the instant case, Coward is unavailable to testify at trial because of his death. According to Fenner's testimony at the motion *in limine* hearing before Judge Morrison, there is evidence that Coward had been shot by Salaam in

close range; that Coward is dead; and that only one witness was present when Coward identified Salaam as his killer. The Court therefore holds that, under either a clear and convincing standard or a preponderance standard, Salaam forfeited his right of confrontation and Coward's statement is properly admissible.

In summary, then, the Court for the foregoing reasons holds that Coward's statement to Fenner is admissible.