# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Calvin Lamont Morgan

October 27, 2005

Case Nos. CR05-F-2280; CR05-F-2281

BY JUDGE MARGARET P. SPENCER

On September 20, 2005, the Court denied the Defendant's motion *in limine* seeking to prohibit evidence concerning any statement wherein the decedent identified his killer. The Defendant argued the statements were inadmissible hearsay because they did not satisfy the requirements of the dying declaration or excited utterance exceptions to the hearsay rule. The Court instructed counsel to brief whether the statements in question were testimonial in nature and thus precluded by the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004). This letter opinion memorializes the grounds upon which the Court denied Defendant's motion.

*Statement of Facts*

On May 23, 2005, City of Richmond firefighters and police officers went to the intersection of 20th and P Streets in Richmond, Virginia, where they found Billy Graham lying in the front yard of a nearby house. Mr. Graham had

seven visible gunshot wounds to his body, including one to his head, but was alert and responsive.

Mr. Graham provided his name and complained of abdominal pain. Mr. Graham steadily prayed to God while being attended by firefighter Christopher Spencer. The firefighter heard Mr. Graham make statements in a "religious context" and, at the time, knew Mr. Graham was praying to God.

Lieutenant John Venuti then arrived on the scene and saw the paramedics working on Mr. Graham. While Mr. Graham was being placed into the ambulance, Lieutenant Venuti asked Mr. Graham who shot him. Mr. Graham answered, "C-Murder shot me." In a previous hearing, a similar statement made by the victim to Nurse Carson was deemed by this Court to be admissible at trial, as it was not testimonial in nature. Therefore, it was not subject to exclusion under *Crawford*. The lieutenant asked if Graham knew "C-Murder's" real name or what he was wearing. He responded he did not know the answer to either question. Mr. Graham later died from septic shock as a result of the gunshot wounds.

Sergeant Wayne Skinner of the Richmond Police Department had been a patrol officer in the district encompassing 20th and P Streets prior to becoming Sergeant. He had known Defendant for a number of years and had always known Defendant to answer to the name "C-Murder." Sergeant Skinner had been involved in a prior case in which the victim stated "C-Murder" was the "one that did it." Detectives later arrested this Defendant in that incident. The police maintain a computerized database of nicknames with corresponding photographs. Sergeant Skinner said Defendant's photograph resulted when the nickname "C-Murder" was entered into that database.

## I. *The Dying Declaration and Excited Utterance Exceptions*

Defense counsel argued Mr. Graham's statements to Lieutenant Venuti do not qualify as dying declarations because there was no evidence Mr. Graham believed he was dying without hope for recovery. There was no evidence Mr. Graham stated he was dying or he thought he was about to die. Counsel argued Mr. Graham's constant praying while he received treatment is insufficient, as the fact of prayer does not connote a belief that death is imminent. Counsel further argued Mr. Graham's statements to Lieutenant Venuti could not qualify under the excited utterance exception because the statements were prompted by Lieutenant Venuti's questioning rather than by the startling event itself.

## A. *Dying Declaration Exception*

The admissibility of dying declarations has been firmly established as an exception to the hearsay rule. To be admissible as a dying declaration, the declarant's statement must have been made while the declarant was under a sense of impending death, and without any hope or expectation of recovery. *Batten v. Commonwealth*, 190 Va. 235, 243 (1949). Mere belief in the possibility, or even the probability of death is insufficient. *Compton v. Commonwealth*, 161 Va. 980, 985 (1933). The Commonwealth must prove the declarant possessed the requisite mental state at the time the declaration was made. *Batten*, 190 Va. at 235.

Mr. Graham made the statements after being shot seven times, including one penetrating gunshot wound to the head. Mr. Graham prayed constantly after being shot, as stated by emergency personnel who responded to the scene of the shooting. There is no requirement in the case law that the verbiage used by the declarant contain the words death or dying. Considering the nature of the injuries and Mr. Graham's behavior while being treated, the Court finds Mr. Graham believed he was about to die when he made the statements to Lieutenant Venuti.

## B. *Excited Utterance/Res Gestae Exception*

A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter asserted when the statement is spontaneous and impulsive. *Clark v. Commonwealth*, 235 Va. 287, 292 (1988). The statement, when made by a declarant with first hand knowledge of a startling event, must be made under circumstances that would preclude a presumption that the declarant had any opportunity to reflect and deliberate. See *Goins v. Commonwealth*, 251 Va. 442, 460 (1996); and *Harris v. Commonwealth*, 8 Va. App. 424, 430 (1989). There is no fixed rule to be applied in the resolution of the issue whether a statement qualifies as an excited utterance. The issue depends on the totality of the circumstances in each case. *Clark*, 235 Va. at 292; see also *Goins*, 251 Va. at 460.

The totality of the circumstances surrounding Mr. Graham's statement satisfies these requirements. The evidence is sufficient to establish: (1) Mr. Graham was still acting under the agitation of the startling event of being shot; and (2) he spoke based on his firsthand knowledge of the event, particularly, of who shot him. The fact that law enforcement's questioning prompted the statement "C-Murder shot me," does not render the statement inadmissible. See *Harris*, 8 Va. App. at 429 (holding statements by the decedent in response to police officer's questioning qualify as excited utterances).

Lieutenant Venuti approached Mr. Graham as he was being loaded into an ambulance and asked who shot him; whether he knew that person's real name; and what the person was wearing. This all happened within minutes of the shooting while Mr. Graham was being treated by emergency medical personnel and while Mr. Graham repeatedly prayed to God. There are no facts indicating Mr. Graham had any opportunity to reflect or premeditate prior to answering Lieutenant Venuti's questions. The statements therefore qualify under the excited utterance/res gestae exception to the hearsay rule.

## II. Sixth Amendment Right to Confrontation: Forfeiture by Wrongdoing

The statements made to Lieutenant Venuti qualify as exceptions to the hearsay rule. The Supreme Court's ruling in *Crawford v. Washington* regarding the Confrontation Clause of the Sixth Amendment is pertinent to this Court's ruling. The Supreme Court overruled its decision in *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), which allowed the admission of statements by an unavailable witness in a criminal trial if the statements fell within a firmly rooted hearsay exception or bore adequate indicia of reliability. *Crawford*, 541 U.S. 36 (2004).

In *Crawford*, the Court addressed the admissibility of hearsay statements in light of the Confrontation Clause, which states, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Amend. VI. The Court held the Confrontation Clause to apply to out-of-court statements offered to prove the truth of the matter asserted. *Crawford*, 124 S. Ct. at 1359. The Court distinguished between testimonial and non-testimonial out-of-court statements and held that only testimonial statements implicate the right to confrontation. The Court did not specifically define "testimonial" hearsay, but focused its analysis on witnesses against the accused who "bear testimony." *Crawford*, 124 S. Ct. at 1364. The Court then defined testimony as typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. Statements taken by police officers in the course of interrogation are therefore testimonial. For such statements to be admissible, the declarant must be unavailable and the accused must have had a prior opportunity to cross-examine. See *id*. at 1374. The Court separately addressed the dying declaration as a deep-rooted hearsay exception which the case law supports admission, despite whether the statement is testimonial.

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is sui generis.

*Crawford*, 24 S. Ct. at 1366, n. 6.

The issue of whether Mr. Graham's statements were testimonial in nature need not be addressed in this opinion. The Court finds, by a preponderance of the evidence,[1] that the Defendant forfeits his Sixth Amendment right to confront his accuser by having procured Mr. Graham's absence from this trial.

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

*Commonwealth v. Salaam*, 65 Va. Cir. 405 (2004) (quoting *Reynolds v. United States*, 98 U.S. 145, 158-59 (1879)). A defendant who is responsible for a witness' unavailability, thereby "extinguish[es]" his Confrontation Clause rights "on essentially equitable grounds." *Crawford*, 24 S. Ct. at 1370.

The Defendant offered evidence tending to establish that there is at least one other person who goes by the name "C-Murder." The evidence was a compact disc and an internet article about a famous rapper who also uses the name. The Commonwealth offered evidence that Sergeant Skinner has known the Defendant for several years as "C-Murder;" the sergeant had known the Defendant through patrolling the district encompassing the scene of the shooting; Defendant has answered to the name "C-Murder;" and that Defendant is identified in a database as having used the name "C-Murder."

---

[1] *United States v. Rivera*, 292 F. Supp. 2d 827, 831 (2003) (In a forfeiture by wrongdoing case, the party seeking to admit hearsay evidence against a defendant must prove the necessary elements by a preponderance of the evidence.).

The Court finds the Commonwealth has proved, by a preponderance of the evidence, that the Defendant is "C-Murder," the person named by Mr. Graham as the man who shot him. Therefore, Defendant forfeited his Sixth Amendment right to confront Mr. Graham by causing Mr. Graham's death and thus procuring his absence from these proceedings. The statements will be admitted under both the dying declaration and excited utterance/res gestae exceptions to the rule against hearsay.

## III. Conclusion

In the instant case, Mr. Graham is unavailable to testify because he is deceased. In light of the evidence presented at the motion *in limine* hearing, the court holds: (1) the statements by Mr. Graham to Lieutenant Venuti are admissible under the dying declaration and excited utterance exceptions to the hearsay rule; (2) Defendant, Calvin Morgan, forfeited his Sixth Amendment right of confrontation because he is responsible for the declarant's, Billy Graham's, unavailability.