COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges AtLee and Malveaux

BRIAN CAMERON HUNTRESS, SR.

MEMORANDUM OPINION*

v.      Record No. 1583-23-1

PER CURIAM
NOVEMBER 26, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

(Catherine French Zagurskie, Chief Appellate Counsel; Courtney
Squires, Third Year Law Student; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Brooke I. Hettig, Assistant
Attorney General, on brief), for appellee.

Following a jury trial, Brian Cameron Huntress, Sr., was convicted of assault and battery of

a law enforcement officer and obstruction of justice in violation of Code §§ 18.2-57(C) and -460(B).

On appeal, he alleges that the court erred by admitting testimony about his post-arrest conduct and

ruling the evidence was sufficient to prove his intent to do bodily harm. We hold the trial court did

not err and affirm the convictions.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[2]

I. Huntress's Kicking of Officer Spruill and Resulting Arrest

On August 27, 2022, uniformed police officers went to a convenience store in response to a report that a man had chased a woman into the store's bathroom. Officers Antonio Spruill and Daniel Rutledge of the Chesapeake Police Department found a woman named Susie inside the bathroom and located Huntress outside the store. Huntress's speech was slurred, he smelled of alcohol, and he admitted to Spruill that he had drunk five beers earlier. Upon learning that Huntress might have an outstanding arrest warrant, Spruill handcuffed him. When Huntress said his hip hurt due to a pre-existing medical issue, Spruill allowed him to sit on the bumper of the police car.

Although initially cordial with the officers, Huntress became "a little aggravated" after being handcuffed and learning about the outstanding arrest warrant. His agitation grew after he saw a man he believed was "another boyfriend of Susie's" arrive at the store. Huntress cursed and yelled at the man. Then, after Spruill confirmed the existence of the arrest warrant and told Huntress that they would take him to the magistrate's office to be served with the warrant, Huntress's "demeanor . . . changed." He "went from . . . a medium to a high level of agitation."

Huntress became even more agitated and belligerent after the officers discovered he had marijuana in his possession. When Officer Spruill asked Officer Rutledge if he had a "destruction bin" for the marijuana, Huntress asked them to put it in Susie's car. The officers told him they could not do so, and Huntress then angrily said he wanted his phone and other belongings from Susie's car.

---

[2] According to familiar principles of appellate review, we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "In doing so, we discard any of [Huntress's] conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

The officers escorted Huntress to a patrol car, where Spruill asked if he had any contraband and told Huntress that he was going to search him. Huntress continued to be "belligerent" and did not cooperate with the search. With help from Rutledge, Spruill pushed Huntress toward the police car. Huntress was facing the car, and to prevent him from moving, Spruill stood with his legs straddling Huntress's legs "off to the side." Huntress reacted by shouting, "Dude, if you touch me like that . . . motherfucker!" He made a "donkey kick," lifting his left leg and kicking back toward Officer Spruill, striking the officer's groin area and causing him pain.

Spruill placed Huntress in the back of his police car, where he kicked, cursed, and screamed.

## II. Huntress's Post-Arrest Conduct Before Booking

During the trip from the convenience store to the magistrate's office and then to the booking area of the jail, Huntress continued to kick the car door and scream profanities. Upon arriving at the magistrate's office, he "faked passing out." He also threatened Spruill, stating that he "better wear that vest inside and outside." Then, while being escorted from the police car, Huntress sat on the ground and refused to move. After Huntress demanded medical attention, he was transported to the hospital and continued his abusive conduct in the ambulance.

While at the hospital, Huntress told Spruill, "I'm going to fuck you up." He also resisted Spruill's efforts to get him into the back of his police car for transport back to the magistrate's office. Once back at the magistrate's office, Huntress maintained his "erratic behavior" until the booking deputies took custody of him.

## III. Huntress's Trial

During Huntress's jury trial, the Commonwealth, without objection, introduced into evidence complete copies of Spruill's and Rutledge's body-worn camera recordings of their interactions with Huntress on the evening of his arrest. The jury watched those segments of the

officers' recordings that captured Spruill's attempts to search Huntress's person and the resulting kicking incident beside the police car.

Officer Spruill testified about Huntress's post-arrest conduct. When Spruill testified about arriving with Huntress at the hospital, defense counsel objected on relevance grounds. The prosecutor responded that Spruill's testimony was "to complete the narrative of the event that transpired that night until [Huntress was] released from the officer's custody." The trial court overruled the objection.

At the close of the Commonwealth's case-in-chief, Huntress made a motion to strike the evidence, arguing with regard to the assault-and-battery charge that the Commonwealth had not "shown . . . a willful touching" by Huntress. The court denied the motion.

Huntress testified in his own defense and denied intentionally kicking Spruill. He said that while standing at the patrol car, he had most of his weight on his right leg to keep it off his left side because of pain from a prior left hip injury. According to Huntress, his left leg "came up" because Spruill "swung [him] around" and "slammed [him] up against the car." He testified that his leg rose "probably not even twelve inches off the ground." Huntress insisted that he was not upset with the officers, suggesting that his frustration stemmed from "[j]ust Susie and [her new boyfriend]." As to his profanity, Huntress admitted that he "probably did . . . take a little bit out on the officers" but insisted that he did not "try to hurt" Spruill. He denied telling Spruill that he was "going to get shot if he ke[pt] going around acting like that." He admitted, however, that he said nothing about his hip injury when his leg came up. He also admitted that he had five prior felony convictions and several convictions for crimes involving lying, cheating, or stealing.

Following Huntress's testimony, he renewed his motion to strike the evidence, again arguing it was insufficient to prove he kicked Spruill intentionally or willfully. Stating that the issue of intent was a jury question, the trial court again denied the motion.

The jury found Huntress guilty of assault and battery of a law enforcement officer and obstruction of justice. He was sentenced to five years with three years suspended for the assault and battery and twelve months with nine months suspended for the obstruction.

ANALYSIS

Huntress challenges his convictions on specific admissibility-of-evidence grounds and on the sufficiency of the evidence.

I. Admissibility of Officer Spruill's Testimony About Huntress's Post-Arrest Conduct

Huntress argues that the trial court erroneously permitted the jury to consider Spruill's testimony about his post-arrest conduct. He contends that Spruill's testimony about that conduct was not relevant to either of the charges against him. He also suggests that, even if Spruill's testimony about his post-arrest conduct was relevant, its unfair prejudice substantially outweighed its probative value.

A. Principles of Appellate Review

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). In evaluating whether an abuse of discretion occurred, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we

- 5 -

say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).

B. Relevance of Spruill's Testimony About Huntress's Subsequent Bad Acts

Huntress asserts that because his behavior after leaving the convenience store parking lot occurred after his alleged crimes, it was not relevant to whether he acted with the requisite mental state in committing the acts that formed the basis for the criminal charges. Given well-established law defining "relevant" evidence and discussing the parameters of its admissibility, we reject these arguments.[3]

"The scope of relevant evidence in Virginia is quite broad . . . ." *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016). Evidence is relevant when it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "[E]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." *Proffitt*, 292 Va. at 634 (quoting *Va. Elec. & Power Co. v. Dungee*, 258 Va. 235, 260 (1999)). "It is its *tendency* to prove or disprove— not its sufficiency, standing alone, to satisfy the ultimate burden of proof—that makes a fact relevant . . . ." *Thomas*, 44 Va. App. at 753-54. For this reason, the trial court may consider remoteness in time as a factor in determining evidentiary relevance, but it should not exclude such evidence "solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value." *Summerlin v. Commonwealth*, 37 Va. App. 288, 293-94 (2002) (quoting *Lafon v. Commonwealth*, 17 Va. App. 411, 419 (1993)).

---

[3] Focusing on the prosecutor's use of the word "relevant" in informing the trial court that she intended to play only the relevant portion of Spruill's body-worn camera video, Huntress argues that the Commonwealth "conceded" at trial that Spruill's testimony about his post-arrest conduct was irrelevant evidence. We do not address the merits of this argument, however, because Huntress did not make it to the trial court and presents no legal authority supporting it on appeal. Thus, under Rules 5A:18 and 5A:20(e), this argument has been neither preserved nor properly presented for appellate consideration.

"[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that [he] acted in conformity" with it. Va. R. Evid. 2:404(b). Such evidence is admissible, however, if (1) it "tends to prove *any relevant fact pertaining to the offense charged*" and (2) "the legitimate probative value of such proof outweighs its incidental prejudice." *Id.* (emphasis added).[4] As a result, evidence of other crimes or bad acts "is admissible when it 'shows the conduct or *attitude of the accused toward his victim*[;] establishes the relationship between the parties[;] . . . *negates the possibility of accident* or mistake[;]' or shows motive, method, *intent*, plan or scheme, or any other relevant element of the offense on trial." *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021) (first, second, and fourth alterations in original) (emphases added) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)). The test for admitting evidence of other crimes or bad acts is met when a "causal relation or logical and natural connection [exists] between the two acts[] or they . . . form parts of one transaction." *Guill v. Commonwealth*, 255 Va. 134, 140 (1998) (third alteration in original) (quoting *Barber v. Commonwealth*, 182 Va. 858, 868 (1944)). Significantly, this test does not distinguish between subsequent or prior bad acts. *See United States v. Whaley*, 786 F.2d 1229, 1232 (4th Cir. 1986) (applying Fed. R. Evid. 404(b)); *see also Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024) (holding that an accused's conduct following the charged offense can be relevant evidence on the issue of intent).

In this case, the trial court did not err by allowing Officer Spruill to testify about Huntress's acts and statements immediately after he left the convenience store parking lot. Having charged Huntress with the felony offense of assault and battery of a law enforcement officer, the Commonwealth had the burden to prove beyond a reasonable doubt that Huntress intended to kick

---

[4] Huntress asserts that Virginia Rule of Evidence 2:404(b) simply "does not apply here." As a result, he does not suggest under the language of that rule that "incidental prejudice" from the evidence outweighed its "legitimate probative value" and rendered it inadmissible.

Spruill and to inflict bodily harm. *See Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000) ("One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" (quoting *Davis v. Commonwealth*, 150 Va. 611, 617 (1928))).

Because Huntress denied intending to kick Spruill, the Commonwealth was required to prove his criminal intent using circumstantial evidence. *See Gilbert v. Commonwealth*, 45 Va. App. 67, 71 (2005) (noting that the intent to cause bodily harm may be proved using circumstantial evidence). Circumstantial evidence of intent "may include the conduct and statements of the alleged offender, and 'the finder of fact may infer that [he] intends the natural and probable consequences of his acts.'" *Id.* (alteration in original) (quoting *Adams*, 33 Va. App. at 471). To the extent the evidence constituted other bad acts or wrongs, it was relevant. Testimony about Huntress's post-arrest behavior was circumstantial evidence tending to show that Huntress intentionally kicked Spruill to inflict bodily harm.

Given the officers' body-worn camera videos, Spruill's testimony about Huntress's post-arrest behavior also tended to prove a "causal relation or logical and natural connection" between Huntress's pre- and post-arrest bad acts and words. *See Guill*, 255 Va. at 140 (quoting *Barber*, 182 Va. at 868). The videos showed that Huntress became increasingly angry while Spruill attempted to search him and, just before the "donkey kick," said to Spruill, "Dude, if you touch me like that . . . motherfucker!" Then, as Spruill's testimony established, Huntress continued to behave in a belligerent manner toward the officer after his arrest, telling Spruill that he was "going to be shot up," that he "better wear that [protective] vest inside and outside," and that Huntress was "going to fuck [Spruill] up." A rational factfinder could conclude that Huntress's bad acts and words immediately after his arrest were temporally and naturally connected with his pre-arrest bad

acts and words because they similarly reflected and resulted from Huntress's bad attitude towards Spruill.

As a result, we hold the trial court did not abuse its discretion by ruling that the evidence was relevant and admissible.

C.  Alleged "Unfair Prejudice" From Evidence of Huntress's Subsequent Bad Acts

Huntress argues that Spruill's testimony, even if relevant, was "unfairly prejudicial" under Virginia Rule of Evidence 2:403 because the evidence of his post-arrest conduct, especially his threatening statements to Spruill, improperly influenced the jury to find him guilty on an "emotional basis."  We do not address the merits of this argument because Huntress did not make it to the trial court. *See, e.g.*, *Aponte v. Commonwealth*, 68 Va. App. 146, 163 n.8 (2017).  Rule 5A:18 makes clear that "[no] ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable th[e] Court [of Appeals] to attain the ends of justice."  "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."  *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015); *accord Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019).

Huntress did not object to Spruill's testimony about his post-arrest conduct at the hospital based on "unfair prejudice."  When Spruill testified about arriving with Huntress at the hospital, defense counsel objected solely on relevance grounds.  And when the trial court sought to clarify that relevance was the basis of his objection, counsel provided no verbal response.  The trial court then "overrule[d Huntress] on relevance."  Afterward, defense counsel said nothing to challenge the court's interpretation that the objection raised only the issue of relevance.  So nothing in the record reflects that Huntress brought the issue of "unfair prejudice" to the trial court's attention or that the court considered the issue. *See Riner v. Commonwealth*, 268 Va. 296, 324-25 & n.11 (2004)

- 9 -

(holding that objecting on hearsay grounds in the trial court and obtaining a ruling regarding only one level of hearsay did not preserve objections based on the second level of hearsay or the Confrontation Clause for appeal). "[N]either [Huntress] nor [this Court] should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Bethea*, 297 Va. at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)); *see Creamer*, 64 Va. App. at 197 (citing *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004)). Virginia appellate decisions make clear that an objection must be specific to preserve a particular point for appeal. *See Bethea*, 297 Va. at 743. Here, the objection based solely on relevance, which implicated Virginia Rule of Evidence 2:402(a), did not alert the trial court to an objection based on unfair prejudice, which, along with other bases for exclusion, is addressed by Rule 2:403.[5]

We therefore affirm the trial court's judgment overruling Huntress's relevance objection to Spruill's testimony about his post-arrest conduct without considering the issue of unfair prejudice.[6]

II. Sufficiency of the Evidence to Prove Huntress's Intent to Do Bodily Harm to Spruill

Huntress contends that the trial court erred by denying his motions to strike because the evidence did not support a finding that he intended to cause Spruill bodily harm.

---

[5] We have specifically held in several unpublished decisions that a relevance objection does not preserve an argument of unfair prejudice for appeal. *See, e.g.*, *Ellis v. Commonwealth*, No. 1485-07-1, slip op. at 3-6, 2008 Va. App. LEXIS 439, at *5-9 (Sept. 30, 2008); *Wimmer v. Commonwealth*, No. 0977-04-3, slip op. at 9-10, 2005 Va. App. LEXIS 305, at *16-17 (Aug. 2, 2005); *cf. also* Rule 5A:1(f) (explaining that unpublished decisions are not "binding" but may be "informative"). Huntress suggests that no published decision specifically resolves the issue and asks us to adopt a contrary position. We decline the invitation. Existing case law is specific enough to support our conclusion. *See, e.g.*, *Bethea*, 297 Va. at 743 (requiring specificity that is adequate to permit the trial judge to "know the *particular* point being made" (emphasis added) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011))).

[6] Huntress does not argue that either the good-cause or the ends-of-justice exception to Rule 5A:18 should be applied to permit this Court to consider the issue of unfair prejudice. We will not invoke either of these exceptions sua sponte. *See, e.g.*, *Burford v. Commonwealth*, 78 Va. App. 170, 184 (2023).

A. Principles of Appellate Review

When faced with a challenge to the sufficiency of the evidence, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). The appellate court asks only whether, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Barney*, 302 Va. at 97 (emphasis added)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." *Cheung v. Commonwealth*, 63 Va. App. 1, 8 (2014) (quoting *Conrad v. Commonwealth*, 31 Va. App. 113, 123 (1999) (en banc)). In short, when a criminal conviction is rendered by a jury, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make," and "[w]e let the decision stand unless we conclude no rational juror could have reached that decision." *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (en banc), *aff'd*, 266 Va. 397 (2003) (per curiam).

In determining whether a judgment was plainly wrong or unsupported by the evidence, we consider both the direct and circumstantial evidence in the record. *See Commonwealth v. Moseley*, 293 Va. 455, 463 (2017). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

Whether the Commonwealth relies on either direct or circumstantial evidence, it is not required to "exclude every reasonable theory of innocence" but is, instead, required only to establish the guilt of the accused to the exclusion of a "reasonable doubt." *Vasquez v. Commonwealth*, 291

- 11 -

Va. 232, 249-50 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, . . . not [those that emanate merely] from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512). Finally, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact," which "is binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc) (alterations in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)). This is so "*even* if there is 'some evidence to support' the hypothesis." *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Hudson*, 265 Va. at 513).

## B. Intent to Inflict Bodily Harm

Any person who "commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . is guilty of a Class 6 felony." Code § 18.2-57(C). To prove an assault, the Commonwealth must establish that the defendant engaged in an overt act that was either (1) "*intended* to inflict bodily harm with the present ability to inflict such harm" or (2) "'*intended* to place the victim in fear or apprehension of bodily harm,' which did in fact create 'such reasonable fear or apprehension in the victim.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 620 (2020) (emphases added) (quoting *Clark v. Commonwealth*, 54 Va. App. 120, 128 (2009) (en banc), *aff'd*, 279 Va. 636 (2010)). To establish a battery, "the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Kelley*, 69 Va. App. at 625 (quoting *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (alteration in original)). A willful act is "intentional, or knowing, or voluntary, as distinguished from accidental," and in the context of criminal law, the word "willful" generally means "an act done with a bad purpose." *Pelloni v. Commonwealth*, 65 Va. App. 733, 740 (2016) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). This willful or unlawful touching need not cause

- 12 -

physical injury to constitute a battery, but it must be done with the intent to do bodily harm. *Parish*, 56 Va. App. at 330. As a result, whether a touching is a battery "depends on the intent of the actor, not on the force applied." *Id.* (quoting *Adams*, 33 Va. App. at 468).

The intent to do bodily harm to another person can be either "actual" or "imputed by law." *Adams*, 33 Va. App. at 468 (quoting *Davis*, 150 Va. at 617). "[T]he slightest touching of another" constitutes a battery "if done in a rude, insolent, or angry manner" because the "[t]he unlawful intent [to do bodily harm] may be imputed." *Kelley*, 69 Va. App. at 628 (second alteration in original) (first quoting *Adams*, 33 Va. App. at 469; and then quoting *Parish*, 56 Va. App. at 331). And "[w]hether an act is done in a 'rude, insolent, or angry manner' is a finding of fact that this Court will not disturb on appeal unless the finding is plainly wrong or no evidence supports it." *Id.* at 628-29 (quoting *Parish*, 56 Va. App. at 332).

C. Sufficiency of the Evidence to Prove Huntress's Intent to Do Bodily Harm to Spruill

Huntress's only challenge to the sufficiency of the evidence concerns whether it proved he acted with the requisite intent. In this case, the trial court was not plainly wrong in overruling Huntress's motions to strike because the Commonwealth provided sufficient evidence for the jury to find that Huntress kicked Spruill with the intent to inflict bodily harm.

The testimony of the two officers and their body-worn camera videos, taken together, provided evidence of a sequence of events from which the jury, as the trier of fact, could find that, because of alcohol intoxication and escalating agitation and anger, Huntress lashed out at Officer Spruill and kicked him with the intent to harm him. This evidence established that Huntress first had an altercation with Susie at the convenience store. When the officers spoke to Huntress at the store, he admitted drinking five beers earlier and seemed to be under the influence of alcohol. Then, when the police handcuffed him and told him that he might have an outstanding arrest warrant, Huntress "got a little aggravated." While waiting for the police to confirm whether he actually had

- 13 -

an outstanding arrest warrant, Huntress became angry when he saw Susie's suspected boyfriend in the parking lot. When Spruill told Huntress about the warrant for his arrest and the need to go to the magistrate's office, his speech became louder, and he "got a little belligerent." Similarly, Huntress replied angrily when told that he could not put his marijuana in Susie's car or retrieve his phone and other personal belongings. When Spruill positioned Huntress against the police car to search his person, Huntress angrily shouted at Spruill and then kicked him. The officers' body-worn camera video recordings provided additional evidence of Huntress's angry and threatening words immediately before he kicked Spruill. Huntress shouted "Dude, if you touch me like that . . . motherfucker!"

Further, Spruill's testimony established that Huntress "donkey kick[ed]" him in the groin area while Huntress was directly in front of him. Given the leg action involved in performing this kick, Spruill's obvious proximity to Huntress, and the natural and probable consequence of a kick to a man's groin, the jury was entitled to conclude that Huntress intended to do bodily harm to Spruill.

Finally, Spruill's testimony about Huntress's post-arrest conduct had a logical tendency to prove his criminal intent at the time of the kicking. In particular, Huntress's continued threatening words at the magistrate's office and the hospital support the jury's finding that Huntress "donkey kick[ed]" Spruill earlier with the intent to physically harm him.

Huntress argues that no rational jury could find that he intended to do bodily harm to Spruill. First, he suggests that because "only one kick" was involved, a "reasonable hypothesis" was that he kicked Spruill accidentally, "with no intent for bodily harm to occur." He relies on *Montague v. Commonwealth*, 278 Va. 532, 537 (2009), and *Schandel v. Commonwealth*, No. 0707-22-3, slip op. at 4-5, 2023 Va. App. LEXIS 559, at *6 (Aug. 15, 2023), and emphasizes that those defendants' "repeated physical contact[s]" with law enforcement officers were held to

constitute sufficient evidence of criminal intent. Second, he relies on his own testimony and his claim that the body-worn camera video evidence "did not show that he intended to hurt" Spruill.

Neither *Montague* nor *Schandel* supports reversal here. In those cases, neither the Supreme Court nor this Court addressed whether the Commonwealth must prove a defendant's intent to inflict bodily harm by evidence of more than one threatened or completed act of battery. And to the contrary, this Court has reasoned that, given the totality of the circumstances, a rational fact finder may impute the intent to inflict bodily harm to a defendant from a single act of kicking a police officer. *See Wright v. Commonwealth*, 52 Va. App. 690, 708-10 (2008) (en banc).

Huntress's reliance on his own trial testimony and his interpretation of what the body-worn camera videos did and did not show also is misplaced. It ignores our limited role as an appellate court and our duty to defer to the fact finder in matters of assessing witness credibility and determining the weight of all the evidence, including video evidence. *See Barney*, 302 Va. at 97 (citing *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)); *see also Garrick*, 303 Va. at 182 ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not.").

The jury simply was not required to accept Huntress's testimony that he kicked Spruill accidentally. As the trier of fact, a jury is "under no obligation to accept an account it [found] unworthy of belief." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). Given Huntress's extensive criminal record, the jury was entitled to view his hypothesis of innocence as unworthy of belief. In fact, it was entitled to reject his testimony as self-serving and to find that he was lying to conceal his guilt. *See Lambert v. Commonwealth*, 298 Va. 510, 515 (2020); *Camann v. Commonwealth*, 79 Va. App. 427, 443-44 (2024) (en banc). For similar reasons, this Court cannot disturb the jury's assessment of the officers' body-worn camera videos. *See Meade*, 74

- 15 -

Va. App. at 806.  Although the videos do not show Huntress's lower leg and foot making contact with Spruill's groin, they capture Huntress's hostile and angry words and show Huntress's upper body movements just before the moment when Spruill testified he was kicked.  A rational trier of fact could conclude that this evidence reflected Huntress donkey kicked Spruill with the intent to physically harm him.  Accordingly, the trial court's decision to overrule Huntress's motions to strike was neither plainly wrong nor without supporting evidence.  Sufficient evidence supported the jury's finding that the Commonwealth proved beyond a reasonable doubt that Huntress intentionally kicked his left leg at Spruill in a "donkey kick" motion with the intent to inflict bodily harm.

CONCLUSION

The trial court did not err by admitting testimony about Huntress's post-arrest conduct and holding as a matter of law that the evidence was sufficient to prove his intent to do bodily harm.  Accordingly, we affirm Huntress's convictions.

*Affirmed.*